In the Matter of **REVERE COPPER AND BRASS, INC., Debtor.**

Bankruptcy No. 82 B 12073 (PBA).

United States Bankruptcy Court, S.D. New York.

March 25, 1985.

Weil, Gotshal & Manges, Steven Karotkin, New York City, for Revere Copper and Brass, Inc.

Wachtell Lipton Rosen & Katz, New York City, for Creditors' Committee.

Bishop, Lieberman & Cook, New York City, for Equity Sec. Holders Committee.

## MEMORANDUM DECISION AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

This court has been presented by the Bankruptcy Clerk with twenty-eight proposed orders approving the subrogation of Phoenix Capital Corp. ("Phoenix") as assignee-claimant to the rights of twenty-eight different assignor-claimants. In each case the Clerk's Office sent a standard form notice under date of February 13, 1985 to the assignor-claimant that the assignment and request for subrogation had been filed by Phoenix and advised that the court would enter an order of subrogation unless an objection was entered by the assignor-claimant on or before March 5, 1985. See Bankruptcy Rule 3001(e)(2). No objections have been filed.

Attached to each of the assignment of claim instruments is an original letter, identical in content, on Phoenix's letterhead, the body of which reads as follows:

"Dear Sir:

"SUBJECT: Sale of your claim against Revere Copper and Brass Incorporated, Bankruptcy Case No. 82B 12073 (PA)

"Phoenix Capital Corporation is prepared to pay immediate cash for your claim against the bankrupt Revere Copper and Brass Incorporated.

"The schedule of accounts payable filed with the U.S. Bankruptcy Court for the Southern District of New York, indicates that your company has a claim in the amount of [$_____]. Our offer is to pay twenty percent (20%) of the face amount of any valid, uncontested and unpaid claim.

"If you wish to accept this offer, please acknowledge your acceptance in the space provided below and return one copy to me for my further handling. A check will be issued to your company at

once. Claims will be purchased on a first offered, first bought basis."

Nineteen of the letters were sent on six dates between November 5 and 29, 1984. The balance of nine letters were sent on December 6, 1984. In six cases, Phoenix tendered payment to the assignor-claimant and the payment check was cashed prior to November 29, 1984. In five other cases, Phoenix's checks were dated November 29, 1984 and were cashed between December 4 and December 11, 1984. In the balance of seventeen cases, Phoenix's checks were dated between December 3, 1984 and January 15, 1985. The claims assigned range in amount from $1,000 to $8,161.94. Fourteen, or one-half, of the assigned claims are between $1,000 and $2,000 in amount.

On November 30, 1984, *The Wall Street Journal* published an article, a copy of which is attached, based on an announcement by Revere Copper and Brass, Inc. ("Revere"), the debtor in this Chapter 11 reorganization,[1] outlining the details of a plan of reorganization. To date, Revere has not filed a formal plan of reorganization nor, obviously, has any disclosure statement been approved. As it relates to general unsecured creditors whose claims total $45.4 million, Revere's announcement states that such creditors would have three options, one, 65% cash, two, 60% cash plus 10% of their claim in Revere common stock or three, 39% cash, 46% in notes and 15% of the claim value in Revere common stock.

Revere has been in Chapter 11 since October 27, 1982. Although negotiations for a reorganization plan are being seriously pursued and the outline of a plan has been agreed upon, it is uncertain when a plan will be filed and when thereafter confirmation will occur. Confirmation could not occur earlier than summer 1985 since the plan has not yet been filed and the disclosure statement is as yet unapproved. However, no assurance exists that confirmation would occur as early as summer 1985 and it could occur many months later.

1. Revere is one of a number of related corporations that have filed Chapter 11 petitions. The

Phoenix has no relationship to Revere known to the court other than as the assignee of claims. Phoenix is not a member of the Creditors' Committee or the Equity Securityholders' Committee.

The assignor-creditors may indeed prefer the certainty of the 20% cash in hand offered by Phoenix today over the possibility of 65% cash at an uncertain time in the future under Revere's announced plan of reorganization. However, the court is concerned that the assignor-creditors have not been plainly advised of their options. Bankruptcy Rule 3001(e)(2) contemplates that the court will enter the order of substitution only after a hearing on notice and further permits the court to enter such an order as is appropriate. The Advisory Committee Note to this rule states in relevant part:

"The interests of sound administration are served by requiring the post-petition transferee to file with the proof of claim a statement of the transferor acknowledging the transfer and the consideration for the transfer. Such a disclosure will assist the court in dealing with evils that may arise out of post-bankruptcy traffic in claims against an estate. *Monroe v. Scofield,* 135 F.2d 725 (10th Cir.1943); *In re Philadelphia & Western Rv.,* 64 F.Supp. 738 (E.D.Pa.1946); *cf. In re Lathan Lithographic Corp.,* 107 F.2d 749 (2d Cir.1939)."

One of the evils attendant upon a solicitation of assignment of claims for a cash payment such as is being made by Phoenix is that solicited creditors may be unaware of their rights and options and fall prey to the belief that bankruptcy inevitably will result in their receiving the proverbial 10 cents on the dollar or worse. Creditors may not be aware of the difference between a straight bankruptcy case under Chapter 7 and a reorganization case under Chapter 11 of the Bankruptcy Code. Bankruptcy Code § 1125 prohibits solicitation of acceptances or rejections of a filed plan

cases are being jointly administered.

unless the solicitation is accompanied or preceded by a disclosure statement. The disclosure statement must contain adequate information which means information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of claims to make an informed judgment about the plan. Code § 1125(a)(1). The assignor-claimant have not been shown to been given sufficient information by Phoenix that they might make an informed judgment about the offer made to them.[2] That much is required.

The court has determined that it will not approve the assignments until the assignor-creditors have been given until May 1, a period of approximately 30 days, in which to revoke their assignment to Phoenix. The revocation must be made by tendering to Phoenix a check in the amount paid with an indication of a desire to revoke. A copy of the revocation must be filed with the court not later than May 1, 1985. If any revocations are received by that date, the court will decline to approve those assignments but will approve Phoenix's subrogation under any assignments that are not revoked.

Phoenix is advised that as to any claims assigned to it that the court will in the future decline to approve the assignments unless it appears that the claimants have been advised at the time of solicitation and again at the time a check in payment of Phoenix's offer is tendered of the pertinent terms of Revere's announced or any subsequently filed plan and the procedural status of the Chapter 11 case and plan, so that the solicited creditor may know where along the plan filing-disclosure statement hearing-confirmation line the case stands.

It is so ordered.

## APPENDIX

*Wall Street Journal—11/30/84—Pg. 10, Col. 1*

Revere Copper announced a reorganization plan that would provide $284.5 million in cash, notes and securities to settle creditor claims totaling about $300 million.

**Revere Copper Announces Plan
To Reorganize**

———

Concern Would Pay 65 Cents To 100 Cents on the Dollar For $300 Million of Claims

———

By JOHN D. WILLIAMS

Staff Reporter of The Wall Street Journal

NEW YORK—Revere Copper & Brass Inc., in bankruptcy-law proceedings for more than two years, announced a reorganization plan that would settle various creditors' claims by paying from 65 cents to 100 cents on the dollar.

Revere, a metals concern, would provide $284.5 million in cash, notes and securities to settle claims totaling about $300 million. The plan is subject to approval of the bankruptcy court and creditors, steps Revere expects to be completed "during the early part of 1985."

Although some dilution of common shares would result from the new Revere outlined in the plan, there wouldn't be any change in control of the company, a spokesman said.

No Management Changes

Randall Smith, a Revere director, estimated that there could be a 25% dilution in common shareholdings, reflecting issuance of $22.5 million of common shares, with the number yet to be determined. Creditors will receive the shares. "There won't be any changes in management," he said. "We're happy with them."

2. Nothing in this opinion should be construed to hold that a disclosure statement as contemplated by Code § 1125 is required before Phoenix may buy claims. Nor is anything herein to be construed as condoning Phoenix's solicitation to the extent that it may violate any statutory or regulatory provision. Rather, the court is concerned here simply with ensuring that overreaching, if indeed it has occurred, is not condoned in performing the somewhat ministerial task of approving an assignment. Other issues, if they exist, are left for another day.

Mr. Smith is a limited partner in Bear, Stearns & Co., a New York securities house which, with Mr. Smith, is in a partnership that owns more than one-third of Revere's 5.7 million common shares outstanding and more than half of Revere's $41.8 million of 5½% convertible debentures. Another large holder of Revere's common is the Belzberg family of Canada, which has a 9.2% stake.

Revere developed the plan in negotiations with two of its creditor committees. The plan still has to be set in final form before it is filed with the court. "The company has decided it has something to work with, following these negotiations, but I wouldn't presume to predict how all the creditors will respond," said an attorney representing Revere creditors.

'Leaner and Stronger'

The Revere emerging from bankruptcy-law proceedings will be "leaner and stronger" than the company that entered Chapter 11 to get court protection from creditors on Oct. 27, 1982, a company spokesman said. For example, the company has closed a unit that made wiring devices. And it plans, as previously reported, to sell its Scottsboro, Ala., aluminum sheet mill, effective Jan. 1.

The spokesman said Revere currently is operating profitably and would have shown a profit, instead of a $13.1 million loss, for the first nine months this year if there hadn't been a special charge for a $51.6 million legal settlement. For the third quarter, net income was about $10.4 million, or $1.82 a share, compared with net of $3.1 million, or 55 cents a share, a year earlier, when Revere had a special tax credit of $462,000.

Banks, which are owed a total of $63.9 million by Revere, would receive cash and 14% notes to settle their claims under the reorganization plan. The Tennessee Valley Authority (for electricity) and Aluminum Co. of America (for termination of an alumina contract) would receive cash, notes and an as yet unspecified number of new common shares to satisfy their claims totaling $44.6 million against Revere.

Unsecured trade creditors, vendors and employees have three options they may elect to settle their claims totaling $45.4 million: 65% cash; 60% cash plus 10% of their claim in Revere common; or 39% cash, 46% in notes and 15% of the claim value in common.

Holders of Revere's $41.8 million face amount of 5.5% debentures would receive $19.1 million face amount of new 12% convertible debentures, $6.8 million of 12% notes and $15.9 million of new Revere common. Thus the present debenture holders would get 71% of the $22.5 million of new common. This would indicate that the Bear, Stearns partnership would likely increase its common stock interest in the company.