## In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, et al., Debtors.

Bankruptcy No. 88–00448.
Motion Nos. 88–6462M, 88–6463M, 88–6468M and 88–7188M.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 19, 1988.

See also, Bkrtcy., 93 B.R. 910.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for the debtors.

Peter V. Pantaleo, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for Cowen & Co.

Michael B. Guss, LeBoeuf, Lamb, Leiby & MacRae, New York City, for Phoenix Capital Corp.

Dennis A. Watson, Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, Pa., for Phoenix Capital Corp. and Cowen & Co.

Marjorie O. Rendell, Duane, Morris & Hecksher, Philadelphia, Pa., for AI Inv. Partners, L.P.

David S. Versfelt, Donovan Leisure Newton & Irvine, New York City, for Drexel Burnham Lambert, Inc.

Joel M. Helmrich, Tucker Arensberg, P.C., Pittsburgh, Pa., for Pittsburgh Nat. Bank.

### MEMORANDUM OPINION AND ORDER OF COURT

JOSEPH L. COSETTI, Bankruptcy Judge.

The matters presently before the court are the motions of Phoenix Capital Corp. ("Phoenix"), Drexel Burnham Lambert, Inc. ("Drexel Burnham")[1], Cowen & Co.

---

1. Although Drexel Burnham's motion seeks the     same relief as the other moving parties, its mo-

("Cowen"), and AI Investment Partners, L.P. ("AI Investment"),[2] for reconsideration of this court's Memorandum Opinion and Order of November 3, 1988. The motions for reconsideration are granted, as set forth below.

All of the moving parties have purchased various claims at a discount from creditors of the debtor. This court, echoing the concerns expressed in *In re Revere Copper and Brass, Inc.*, 58 B.R. 1 (Bankr.S.D.N.Y. 1985) and *In re Chateaugay*, No. 86B11270, slip op. at 2, (Bankr.S.D.N.Y. March 11, 1988), feared that creditors were selling their claims at extraordinary discounts,[3] without understanding their rights. We were especially concerned because the plan of reorganization pending at the time of our opinion proposed to pay many of the assignors 100% of their claims. We did note that Drexel Burnham and its assignor, Pittsburgh National Bank, were sophisticated financial institutions who understood the implications of their actions.

Bankruptcy Rule 3001(e)(2) controls the assignment of claims made after a proof of claim has been filed:

> *Unconditional Transfer After Proof Filed.* If a claim other than one based on a bond or debenture has been unconditionally transferred after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the original claimant by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed with the clerk within 20 days of the mailing of the notice or within any additional time allowed by the court. If the court finds, after a hearing on notice, that the claim has been unconditionally transferred, it shall enter an order substituting the transferee for the original claimant, otherwise the court shall enter such order as may be appropriate.

However, we did not, and still do not, believe that Rule 3001(e)(2) adequately addressed our concerns. Identical concerns and a similar remedy were expressed by the court in *In re Revere*. To allay our concerns, we promulgated a procedure in which the assignee, in addition to complying with Rule 3001(e)(2), was required to advise the assignor, inter alia, of the debtor's estimate of the value of the assignor's claim by providing the assignor with the appropriate portion of the debtor's disclosure statement. We also empowered the assignors to revoke their assignments by tendering a check and a written revocation to the assignee. It was this procedure, and specifically the provision for retroactivity, which prompted the motions for reconsideration.

At the hearing on the motions for reconsideration, Cowen complained of the chilling effect of the retroactivity provision on future assignments. The moving parties argued that the assignees were generally business entities who knew, or should have known, of the status of the debtor's reorganization and the consequences of their assignments. Cowen, AI Investment, and Drexel Burnham vigorously emphasized the measures they undertook so that the assignors were aware of the implications of their actions. In the case of Cowen, the solicitation advised the prospective assignor that the terms of the assignment may ultimately prove to be less favorable than the treatment ultimately afforded to their claims under the debtor's plan of reorganization. AI Investment obtained waivers from its assignors, in which the assignors stated that they understood the possibility of a greater recovery through a confirmed plan of reorganization. In the case of Drexel Burnham and its assignee Pittsburgh National Bank, the assignment came about after several months of negotiations in which counsel was frequently involved.

---

tion is captioned Motion for Vacatur, or in the Alternative, Modification of the Court's Memorandum and Order Dated November 3, 1988.

**2.** AI Investment was the transferee of claims purchased by Asclepius Partners, L.P.

**3.** For example, Phoenix purchased claims for 20% of their value.

The assignees and the Official Committee of Unsecured Creditors of Sunbeam have argued that the assignment of claims is not inherently evil, providing cash to cash-starved suppliers who lack the liquidity to wait for confirmation of the plan of reorganization. In this connection, we note that the price paid by some of the assignees for the claims, such as Cowen which purchased claims for 75% of their value, may not be unreasonable. The court is still troubled that Phoenix apparently purchased claims for 20% of their face value. Additionally, had the assignees obtained court approval of their solicitation materials, as was obtained in *In re Joe Norban, Inc.*, 88B–11137–99, (Bankr.S.D.N.Y.1988), the instant dispute might have been avoided. *See* C. Fortgang and T. Mayer, *Trading Claims and Taking Control of Corporations in Chapter 11*, New York University 14th Annual Workshop on Bankruptcy and Business Reorganizations, p. 121, August 29, 1988.

Section 1125(b) of the Bankruptcy Code, 11 U.S.C. § 1125(b), prohibits solicitation before a disclosure statement has been disseminated. We remain troubled that the process by which claims are solicited constitutes solicitation, but does not provide even a minimum of information. Moreover, the assignment of claims process allows a third party to do something which the debtor cannot. Earlier in this case, the debtor moved for leave to pay certain trade creditors of Sunbeam 90% of their claims, at a time before the plan of reorganization was near confirmation. This class is proposed to receive 100% of their claims. The debtor represented that such action was necessary to maintain good relations between Sunbeam and its suppliers, and that many such suppliers were selling their claims at steep discounts. Although this court was sympathetic to the debtor's arguments and the plight of those creditors, the court believed that it lacked authority to grant the requested relief. Simply stated, the Bankruptcy Code does not permit a debtor to pay its pre-petition debts to suppliers, at a discount or otherwise, before confirmation of the plan, but it appears to allow third parties to purchase the claims of those suppliers at discounts, which are sometimes outrageous, without any disclosure.

We also remain concerned that some assignors were not aware of the implications of the assignment of their claims. Although it appears that the assignors were generally business entities, some of them were small businesses who may have lacked an understanding of Chapter 11 and ready access to the debtor's plan of reorganization. Many people in small businesses do not read the Wall Street Journal!

By the filing of a bankruptcy case, a market in nonpublicly traded securities is created. Claimants are not protected by a disclosure statement. It is an undesirable practice. This court intends to continue to press the debtor in possession to file its modified disclosure statement and plan, and to move expeditiously to confirmation, to reduce the need of creditors to accept these offers. We do not believe that Congress intended the trafficking in claims such as has occurred in this case and others. Such concerns are evident from the 1983 Advisory Committee Note, although we recognize that the cases cited therein involved breaches of fiduciary duty. A breach of fiduciary duty implies inside knowledge. Although this case does not involve inside knowledge, it is colored with superior knowledge, and thus the assignments are similar to contracts of adhesion. We hope that Congress will address these concerns in the future.

After balancing the equities, we rescind the procedure for assigning claims set forth in this court's Memorandum Opinion of November 3, 1988. The court will approve previous assignments, and enter appropriate orders, if these assignments strictly comply with Rule 3001(e)(2). Prospective assignments will require compliance with Bankruptcy Rule 3001(e)(2), as modified by this order. We impose on the debtor the duty of advising the potential assignor of the debtor's estimate of the value of the claim. The prospective assignee, in addition to filing a copy of the information required by Rule 3001(e)(2) with the clerk, shall provide such information to the debtor. Within 15 days, the debtor shall

provide the potential assignor with its best estimate of the value of the debtor's claim, until such time as a new plan of reorganization and disclosure statement are filed. The court explicitly grants the debtor permission to provide such information. The debtor shall be held harmless from any claims arising from such disclosure. After the plan of reorganization and disclosure statement are filed, the debtor shall provide the relevant information from the plan of reorganization and disclosure statement in lieu of its estimate of the claim. Proof that the debtor has provided the requisite information shall be filed with the court. The 20–day period for filing objections, as set forth in Rule 3001(e)(2), shall run from the filing of this notice by the debtor. If no objections are filed, the court will approve the assignment.