**In re ODD LOT TRADING, INC., et al., Debtors.**

**Bankruptcy Nos. 588–1312, 588–1313, 588–1761 to 588–1812, and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

May 16, 1990.

John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, for debtors.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Niedenthal, Columbus, Ohio, for Odd Lot Trading, Inc. Creditors Committee.

Sonia E. Gardner, New York City, John J. Guy, E. Jane Bell, Guy, Lammert & Towne, Akron, Ohio, for Amroc Investments, L.P.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING OBJECTIONS TO ASSIGNMENTS OF CLAIMS TO AMROC INVESTMENTS, L.P.

HAROLD F. WHITE, Bankruptcy Judge.

This matter comes before the court upon Debtors three objections to assignments of claims to AMROC Investments, L.P. ("AMROC") [Assignment of Claims Docket ("Docket") Nos. 430, 442, 448 and 449]. The matter was duly scheduled for hearing with notice provided to the parties. Both Debtors and AMROC filed briefs in support of their position and appeared represented by counsel. Also considered at the hearing was the objection of McKee Baking Company ("McKee") to assignment of its claim to

AMROC (Docket No. 435). McKee was not present at the hearing. The Official Trade Creditors' Committee of Odd Lot Trading, Inc. (the "Committee") also filed a memorandum with respect to the objections (Docket No. 438).

After having an opportunity to hear the witnesses and consider the evidence submitted, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) and General Order No. 84 of the U.S. District Court, Northern District of Ohio. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. On January 19, 1990, the Debtors filed a plan of reorganization and proposed disclosure statement in the Odd Lot cases and gave notice of a hearing on the approval of the disclosure statement to be held on February 27, 1990.

3. On January 22, 1990, AMROC solicited the purchase of claims against Odd Lot in letters that enclosed three of the 32 pages of the proposed disclosure statement without any portion of the proposed plan (the "Solicitation Letter"). The Solicitation Letter provided in pertinent part:

In accepting our offer, we would like you to be aware that the Debtor has filed a Joint Plan of Reorganization ("Plan") and accompanying Disclosure Statement dated January 19, 1990 with the United States Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court"). Enclosed please find for your review a copy of the portion of the Disclosure Statement which outlines the proposed treatment of general unsecured creditors such as yourself, along with the relevant portion describing the Prerequisites to Confirmation. Please note that this is not a copy of the entire Disclosure Statement and that copies may be obtained from Xerox Reproduction Center at (216)773-1577.

Notwithstanding the above, Amroc Investments, L.P. makes no representa-

tions or warranties concerning the truth or accuracy of the content or substance of the Debtor's Plan or Disclosure Statement, or concerning when any plan of reorganization will be confirmed by the Bankruptcy Court, or when distributions to creditors will be made by the Debtor. (Reply of AMROC, Ex. A, Docket No. 453).

4. AMROC solicited claims at $0.60 on the dollar. The proposed plan provides for payment of $0.80 on the dollar plus a share of earnings on invested funds that will probably bring the figure to approximately $0.85 on the dollar.

5. On February 27, 1990, the Court held a hearing and entered an Order approving the disclosure statement. The portion of the unapproved disclosure statement that AMROC used to solicit the purchase of claims was modified in the disclosure statement as approved.

6. Between January 29, 1990, and March 1, 1990, AMROC purchased 36 claims from Odd Lot creditors. AMROC filed three separate "Notices and Statements of Transfer of Claims" with the Court (Docket Nos. 426, 433 and 445). A listing of the original creditors is attached and designated as "EXHIBIT A".

## ISSUE

Should the Court Sustain the Objections to the Assignments of Claims to AMROC Based Upon AMROC's Use of a Portion of the Unapproved Disclosure Statement in the Solicitation of the Claims?

## GENERAL BACKGROUND

The Debtors filed three separate objections to the assignments to AMROC. The three separate objections pertain to three separate groups of assignments filed but are based on the same grounds and therefore shall be addressed collectively by this Court. McKee is the only objecting assignor.

In their objections the Debtors contend that the circumstances of the assignments raise a question as to whether the assignors have been treated fairly. The Debtors assert they filed their objections as fiduciaries as they have a duty to be fair to all constituents.

The Debtors contend that the Court should assess the totality of the circumstances in deciding whether or not to approve the assignments. The fact that the confirmation process had begun, that a portion of the unapproved disclosure statement was used in the solicitation and was made just prior to Debtors soliciting acceptances of the Odd Lot Plan are some facts that the Debtors believe this Court should consider. Debtors argue that a purpose of Section 1125(b) of the Bankruptcy Code, 11 U.S.C. § 1125(b), is to provide holders of claims with sufficient information to enable them to make intelligent and informed decisions with respect to their claims. Debtors assert the circumstances of the subject assignments violate the spirit, if not the letter, of Section 1125(b).

McKee filed a letter with the Court which questioned the validity of the solicitation by AMROC. McKee stated that the Solicitation Letter contained "no mention regarding the forthcoming Ballot for Reorganization" and after assigning its claim to AMROC received the Ballot which indicated the estimated payout of 80% plus interest to unsecured creditors.

AMROC replies that the three pages of unapproved disclosure statement used in the Solicitation Letter was the best information available at the time of solicitation. The three pages were copies of public documents, available to anyone, and referred to the 80% payout and the IRS claims. The Solicitation Letter sent to each creditor also provided information on how to obtain the complete disclosure statement from the Xerox Reproduction Center. AMROC further asserts that McKee does not claim it was misled by AMROC but only that AMROC did not mention the "forthcoming Ballot for Reorganization". AMROC asserts it could not mention such Ballot as at the time of solicitation the Court had not approved the plan and disclosure statement.

The Committee filed a Memorandum wherein it stated: 1) there is nothing in Section 1125(b) to indicate it applies to the sale or assignment of claims; and 2) the

Solicitation Letter contained information regarding the substantive treatment of the unsecured creditors, the prerequisites for confirmation, and how to obtain the entire disclosure statement.

## CONCLUSIONS OF LAW

Upon review of the facts and circumstances of the solicitation, the arguments of counsel and a review of the pertinent law, this Court concludes that the objections of debtors should be overruled and the objection of McKee should be sustained.

It is significant to the Court that the solicitation by AMROC occurred between January 29, 1990 and March 1, 1990. The creditors who assigned their claims were aware of the disclosure statement as approved on February 27, 1990, and after receiving notice of the objections and hearing on the instant matter only one creditor, McKee, objected to the assignment.

The Court is aware that since the recent filings of "megacases" the trading in claims has become a brisk business which involves millions of dollars. Numerous articles and bankruptcy law seminars have addressed the trading of claims that has come about as a result of these cases. Several bankruptcy judges have also expressed concern over the increased claims trading.

Bankruptcy Rule 3001(e) governs transfer of claims and provides for specific filing and notice requirements when transfers occur. Neither the Bankruptcy Code nor Bankruptcy Rule 3001(e) address solicitation of claims. Section 1125(b) of the Bankruptcy Code, 11 U.S.C. § 1125(b), deals with solicitation of acceptance or rejection of plans of reorganizations, not with solicitation of transfers of claims.

This Court finds Section 1125(b) and related case law submitted by Debtors unpersuasive. The facts of *In re Revere Copper and Brass, Inc.*, 58 B.R. 1 (Bankr.S.D.N.Y. 1985) are distinguishable from the instant case. In *Revere*, Judge Abram provided assignor-creditors with an additional 30 days to revoke their assignments to Phoenix Capital Corporation. Judge Abram determined that the assignor-creditors had insufficient information to make an informed judgment about the offer made to them. *Id.* at 3. No disclosure statement or plan had been filed in the case, but a Wall Street Journal article published at the time of solicitation outlined the details of a possible plan of reorganization.

Judge Cosetti in *In re Allegheny International Inc.*, 100 B.R. 241 (Bankr.W.D. Pa.1988) established a procedure for claims trading in addition to the requirements of Bankruptcy Rule 3001(e). Judge Cosetti ordered that prospective assignees of claims must comply with Bankruptcy Rule 3001(e) and inform the debtor of the prospective assignment. The debtor, in turn, was required to provide the potential assignor with its best estimate of the value of the claim until a plan and disclosure statement were filed. Upon said filing, the debtor was required to provide the relevant information from the plan and disclosure statement to the potential assignor.

In larger cases the debtors' stocks and bonds, which are listed on the public exchanges, are still actively being traded subject to security laws.

It is apparent that Congress did not enact into the Bankruptcy Code any statute governing the trading of claims. However, Bankruptcy Rule 3001, as adopted in 1983 and amended in 1984, does address trading claims.

Presently, amendments to the Bankruptcy Rules are under consideration and the preliminary amendments dated August, 1989 have been circulated for comments and hearings thereon have been concluded. It is anticipated that these amendments will be submitted to the Judicial Conference of the United States and the Supreme Court and shall become effective on or about August, 1991. In the proposed amendments to subdivision (e) of Bankruptcy Rule 3001, the drafters propose to limit the Court's role in adjudicating disputes

regarding transfers of claims. The proposed amendments indicate the purpose of the amendment is to lessen the Court's involvement when claims are transferred.

Therefore, it is apparent the intent is to limit inquiry by the Bankruptcy Court which was questioned by the Judges in *Revere* and *Allegheny, supra.*

■ In the instant case, unlike *Revere* or *Allegheny,* AMROC provided to the creditors three pages of the disclosure statement which contained the amount creditors would receive under the plan and the obstacles remaining prior to confirmation. (Finding No. 3). AMROC also provided creditors with information to obtain the complete disclosure statement. (Finding No. 3). The information used in the Solicitation Letter was public information. AMROC further notified the creditors that it made no representations "when any plan of reorganization will be confirmed by the Bankruptcy Court, or when distributions to creditors will be made by the Debtor." (Finding No. 3).

This Court concludes that AMROC provided sufficient information and did not mislead the assignors when soliciting to purchase claims in these chapter 11 proceedings. This Court further concludes that AMROC has complied with Bankruptcy Rule 3001(e)(2) and the assignments, with the exception of McKee, should be approved. Accordingly, the objections of the Debtors are overruled.

■ The Court concludes that the objection of McKee should be sustained. Pursuant to Bankruptcy Rule 3001(e), McKee filed an objection to the assignment with this Court indicating its intent to invalidate the assignment.

Accordingly, this Court shall order that McKee refund the full amount it received for its claim to AMROC and file notification of same with this Court.

A separate Order shall be entered in accordance with these Findings and Conclusions.

## EXHIBIT A

### ORIGINAL CREDITORS

A. RIFKIN CO.
ADVO SYSTEM, INC.
ARCHER ADVERTISING, INC.
ARKAY ADVERTISING, INC.
ARKAY CONSTRUCTION, INC.
AUTOMATIC DATA PROCESSING, INC.
BALTIMORE SIGN CO.
CELLA ASSOCIATES
CCA INDUSTRIES, INC. nka CCA COSMETICS, INC.
DADS COOKIE CO. aka MRS. ALISON'S COOKIES CO.
FROMM ELECTRIC SUPPLY CORP.
GAP ELECTRICAL CONTRACTING CORP.
HART PERSONNEL, INC.
HEADSTROM CORP.
INGRID LTD.
JERSEY CENTRAL POWER & LIGHT CO.
KAMEYAMA U.S.A., INC.
KLH ENTERPRISES, INC.
LCI INDUSTRIES, INC.
MARSHALLAN INDUSTRIES, INC., nka ALAMAR INDUSTRIES, INC.
MBR INDUSTRIES, INC.
MCKEE BAKING COMPANY
MEZ ELECTRIC CO., INC.
NEVCO HOUSEWARES, INC.
POLY–PAK INDUSTRIES, INC.
RKD AIR CONDITIONING & HEATING
SALTON, INC.
SOUTHERN NEW ENGLAND TELEPHONE CO.
STARLINE, INC.
THE NEW YORK POST CO., INC.
TODAY NEWS
TRADEWELL INDUSTRIES, INC.
TREND SETTERS, INC.
UNITED PLASTICS HOUSEWARES aka UNITED COMB & NOVELTY, CORP.
VANTAGE VENETIAN, INC.
WECOLITE COMPANY, INC.