**In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.**

**Bankruptcy Nos. 89 B 10448 (BRL), 89 B 10049 (BRL).**

United States Bankruptcy Court, S.D. New York.

July 30, 1990.

As Amended Aug. 20, 1990.

proving the assignment of claims from the assignor, Marriott Corporation and certain of its subsidiaries (collectively, "Marriott").

## BACKGROUND

The essential facts involved in this matter are not in dispute and therefore this Court has taken this matter on the submissions of the parties. On August 29, 1989, Marriott filed proofs of claim against Eastern, as amended on December 5, 1989 and January 24, 1990 (the "Claims"), on behalf of itself and certain of its divisions. In the fall of 1989, a representative of Amroc contacted Marriott offering to purchase Marriott's Claims. The negotiations between Amroc and Marriott resulted in a contract for the assignment of claims (the "Assignment") dated December 1, 1989, pursuant to which Marriott assigned $2,547,312.29 of the Claims to Amroc (the "Assigned Claims") for $2,114,269.20. The Assigned Claims included only those claims or portions of claims which are reflected on the Debtor's Schedule of Assets and Liabilities as undisputed, liquidated, non-contingent, valid general unsecured trade claims. However, the Assignment failed to transfer the portions of Marriott's Claims in the amount of approximately $455,335.75 which equals the difference between the amount on Debtor's schedules and the amount on Marriott's proofs of claim.

The Assignment provides that in consideration of the sum of $2,114,269.20 Marriott

> does hereby absolutely and unconditionally sell transfer and assign unto Amroc...., its successors and assigns ('Assignee') all rights title and interest in and to the [Assigned] Claims.... together with interest, if any, which may be paid by the Debtor thereon, including, without limitation, Assignor's rights to receive any cash, securities instruments and/or property that may be issued to Assignor as payment for the [Assigned] Claims in connection with the Bankruptcy Proceedings.

[Assignment at ¶ 1]. The Assignment further provides that it "constitutes the valid, legal and binding Assignment of Claims of

---

## MEMORANDUM DECISION ON ASSIGNMENT OF CLAIMS

BURTON R. LIFLAND, Chief Judge.

The diminished expectations of a 100% recovery to creditors in the Eastern Air Lines, Inc. ("Eastern/Debtor") case have resulted in a degree of discomfort among the many speculators who specialize in purchasing creditors' claims in bankruptcy estates. The instant dispute involves a bizarre situation concerning the assignment of claims in these bankruptcy cases in which the assignee, Amroc Investments L.P., agent for Halcyon Distressed Securities, L.P. ("Amroc") is now objecting to this Court ministerially entering an order pursuant to Bankruptcy Rule 3001(e)(2) approving the assignment of claims from the

Assignor enforceable against Assignor in accordance with its terms....'' [Assignment at ¶ 4].

Marriott appointed Amroc as its true and lawful attorney to act in Marriott's stead, to demand, sue for, compromise and recover all such sums of money payable in respect of the Assigned Claims with full authority to do all things necessary to enforce the Assigned Claims, all solely at Amroc's own discretion. Should Marriott receive any distributions or notices with respect to the Assigned Claims after the date of the Assignment, Marriott agrees to accept same as Amroc's agent and to deliver them to Amroc. [Assignment at ¶ 6].

> Finally, the Assignment provides that: In the event the Bankruptcy Court fails to enter an order approving the transfer of the [Assigned] Claims within one hundred and eighty (180) days of the date from which Assignor has filed this Assignment of Claims with the Bankruptcy Court, Assignee shall have the option to require Assignor to immediately repay, on demand of Assignee, the consideration paid by Assignee hereunder in the amount of $2,114,269.20 with interest thereon from the date hereof to the date of such repayment at 10% per annum.

[Assignment at ¶ 5]. Marriott further agreed to file the Assignment with this Court within sixty (60) days from the date of Assignment. *Id.*

On the same date, Marriott and Amroc entered into a Purchase and Sale Agreement (the "Option Agreement") pursuant to which Marriott granted the right to purchase the remaining portions of the Claims which were not listed on Debtor's schedules and therefore have not as yet been deemed "allowable" for purposes of a distribution (the "Other Claims").

On January 30, 1990, Marriott timely filed with this Court a Motion for Entry of

Order Approving Assignment of Claims. (the "Prior Motion"). The Prior Motion was served on Eastern's Counsel, who did not object to the Assignment. To date, this Court has not granted the Prior Motion. However, if an order approving the Assignment is not entered by July 30, 1990 [1] then Amroc will most likely require Marriott to repay the $2,114,269.20 Amroc has paid for the Assigned Claims, plus accrued interest at a rate of 10% per annum. Given the current anticipated return on general unsecured claims, it is clear that Amroc's main objective is to have this Court refuse to enter an order approving the Assignment so that Amroc could obtain a windfall in the form of a return plus interest of its original payment to Marriott.

In early February of 1990, concerned about what appeared to be the conditional or split nature of the Assignment, this Court informed both Amroc and Marriott that it would not approve the transfer of the Claims to Amroc while permitting Marriott to retain other portions of those claims against Eastern. In fact, Amroc was also informed at that time that this Court would not approve the transfer of well over one hundred claims to Amroc because Amroc purchased only those portions of the creditors' claims appearing on Eastern's schedules, and not the claims set forth in the individual creditors' proofs of claim [2].

In response to this Court's concerns, on July 5, 1990, Marriott submitted a supplemental application (the "Supplemental Application") in which Marriott represents that, in order to facilitate this Court's approval of the Assignment by July 30, 1990, it shall amend the Claims to assert claims solely for the Assigned Claims, reducing the total amount claimed to $2,547,312.29, and thereby permanently withdrawing any other amounts (the "Withdrawn Amounts") asserted in the Claims. Marriott asserts

---

1. *See*, Bankruptcy Rule 9006(a), which extends the 180-day period, which would otherwise fall on a Sunday, to the end of the next day.

2. It should be noted that *other* financial institutions who traffic in claims, which, like Amroc, originally purchased only the undisputed portions of claims as listed in the Debtor's schedules, have taken corrective measures by including language in the contract for assignment that they will also purchase any portions of the claims as are allowed for purposes of a distribution pursuant to a plan of reorganization. Amroc has declined to take similar measures.

that its amendment of the Claims shall be without prejudice to any rights of Marriott against, and Marriott expressly reserves its right to recover the Withdrawn Amounts and any other claims it may have from, any party other than Eastern that may be liable with Eastern on the underlying debts in respect of the Withdrawn Amounts and any other claims, including but not limited to, Continental Air Lines, Inc. Accordingly, Marriott contends that the Assignment now meets the requirements of Bankruptcy Rule 3001(e)(2). Marriott maintains that the explicit language as well as the intent of the Assignment clearly and straightforwardly provide for an unconditional transfer.

In contrast, Amroc asserts that in attempting to respond to this Court's policy of not permitting the splitting of claims, Marriott has proposed in its Supplemental Application to withdraw certain claims against Eastern, including, the Other Claims which Amroc retains the right to purchase under the Option Agreement. Amroc argues that to further its own interest, Marriott seeks this Court's approval of Marriott's unilateral breach of the Option Agreement.

## DISCUSSION

Bankruptcy Rule 3001 provides procedures which must be followed in order to effectuate transfers and assignments of claims in bankruptcy cases. Specifically, Bankruptcy Rule 3001(e)(2) [3] provides:

**3.** Because little or no information is usually provided with requests for claims assignment orders, this Court has issued its informational *Supplement To The Requirements Of Fed.R. Bankr.P. 3011(e)(2)* which provides:

 In connection with requests for claimant substitution orders pursuant to Fed.R. Bankr.P. 3001(e)(2), the following shall be included in the application accompanying each claim assignment order:

 1) A statement of the consideration paid for each assigned claim.

 2) A representation that the assignee of the claim did not solicit the assignor via the use of misinformation. This requirement may be satisfied by either:

 (a) providing a copy of the letter from the assignee to the assignor which solicited the claim assignment; or if the claim was not solicited by letter,

(2) *Unconditional Transfer After Proof Filed.* If a claim other than one based on a bond or debenture has been *unconditionally transferred* after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the original claimant by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed with the clerk within twenty days of the mailing of the notice or within any additional time allowed by the court. If the court finds, after a hearing on notice, that the claim has been unconditionally transferred, it shall enter an order substituting the transferee for the original claimant, otherwise the court shall enter such order as may be appropriate.

Fed.R.Bankr.P. 3001(e)(2) (emphasis added).

One of the primary objectives of the requirement in Bankruptcy Rule 3001 that claims be "unconditionally transferred" is to enable the bankruptcy court to monitor the manner in which claims are transferred or assigned and thereby prevent, *inter alia*, the improper proliferation of claims, wrongdoing and inequitable conduct. Accordingly, Bankruptcy Rule 3001 requires that evidence of the terms under which the proof of claim was transferred must be filed by the transferee. This view is supported by the Advisory Committee Note to Bankruptcy Rule 3001, which states in pertinent part:

 (b) a statement that the claim assignment was not solicited by letter, accompanied by a certification that in soliciting the claim, no misleading information was disseminated to the assignor.

 3) If the assignee of the claim drafts and submits the claim assignment order to the Court, then the assignee of the claim shall comply with Local Bankruptcy Rule 45 for the Southern District of New York, and shall provide 7–days notice of the pending claim assignment order to Debtor's counsel prior to scheduling the claim assignment order for signature, in addition to complying with the noticing requirements of Fed.R.Bankr.P. 3001(e)(2). (The alternative is to submit the necessary material evidencing the transfer of the claim, to the Bankruptcy Court Clerk's Office which will draft and notice the order.)

The interests of sound administration are served by requiring the post-petition transferee to file with the proof of claim a statement of the transferor acknowledging the transfer and the consideration for the transfer. Such a disclosure will assist the court in dealing with evils that may arise out of post-bankruptcy traffic in claims against an estate. *Monroe v. Scofield*, 135 F.2d 725 (10th Cir.1943); *In re Philadelphia & Western Ry.*, 64 F.Supp. 738 (E.D.Pa.1946); *cf. In re Latham Lithographic Corp.*, 107 F.2d 749 (2d Cir.1939).

The Proposed Revision to Rule 3001(e)(2) of the Rules of Bankruptcy Procedure takes the bankruptcy court out of the administrative loop by eliminating the need for the court to approve unopposed assignments. Significantly, revised Rule 3001(e)(2), which provides in pertinent part as follows, also eliminates the requirement that there be an unconditional transfer:

If a claim other than one based on a publicly traded bond or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

■ As stated previously, this Court alerted both Marriott and Amroc back in February 1990, that the Assignment, as submitted, did not comply with the "unconditional transfer" requirement of existing Bankruptcy Rule 3001(e)(2) which governs. Specifically, the Assignment provided that Marriott would retain an interest in the Claims, notwithstanding that the Claims are purportedly being transferred and assigned "absolutely and unconditionally". The partial assignment of the Claims by Marriott to Amroc represented a clear violation of both the language and intent of Bankruptcy Rule 3001(e)(2). Consequently this Court informed the parties that it would decline to approve the Assignment in its present form.

The rationale underlying this Court's policy as to splitting of claims is twofold: (1) the approval of such an assignment, and other similar transactions, will likely result in the imposition of a substantially increased administrative burden on the clerks' office as well as the debtor and its estate to the direct prejudice of the creditor body and other parties in interest; and (2) the approval of such an assignment may result in the circumvention of the plan confirmation and voting procedures established by the Bankruptcy Code (the "Code").

As the Advisory Committee Note to Bankruptcy Rule 3001 makes abundantly clear, the bankruptcy court is obliged to take appropriate action with respect to a claim which is the subject of a post-petition transfer or assignment in order to "deal[ ] with [the] evils that may arise out of post-bankruptcy traffic in claims...." *See*, C.J. Fortgang & T.M. Mayer, *Trading Claims And Taking Control Of Corporations In Chapter 11* (August 29, 1988). Clearly, one of the "evils" spawned by bankruptcy claims trading in "mega" cases, the size of Eastern, is the substantially increased burden associated with monitoring, administering and objecting to claims which have been filed against the estate. This increased administrative burden diverts the limited resources of the Debtor's estate and has the potential for impeding the reorganization process. Moreover, the Assignment, and other transactions similar in kind, has the effect of uncontrollably multiplying claims which, in turn, significantly increases the administrative burden imposed on these estate associated with claims administration.

■ Bankruptcy courts are afforded the power to limit or prevent bankruptcy claims trading where taking such action is in furtherance of the court's exclusive jurisdiction over the administration of the debtor's estate and will relieve the debtor and its estate from a great administrative burden. In addition to this Court's inherent authority under Bankruptcy Rule 3001(e)(2), § 105 of the Code also authorizes this Court to fashion appropriate remedies to protect against threatened harm to, or interference with the sound administration of the estate. *See, In re Heritage Village Church & Missionary Fellowship, Inc.,* 87 B.R. 17, 19 (Bankr.D.S.C.1988); *In re Johns–Manville Corp.,* 52 B.R. 879, 889 (Bankr.S.D.N.Y.1985), *aff'd,* 60 B.R. 842 (S.D.N.Y.1986), *rev'd on other grounds,* 801 F.2d 60 (2d Cir.1986); *American Mutual Life Insurance Company v. City of Avon Park,* 311 U.S. 138, 146, 61 S.Ct. 157, 162, 85 L.Ed. 91 (1940) (holding that "the court has ample power to adjust the remedy to meet the need.... That power is ample for the exigencies of varying situations. It is not dependent upon express statutory provisions. It inheres in the jurisdiction of a court of bankruptcy.") Indeed, both this Court and other bankruptcy courts have in the past acted to restrict assignments of claims where such action was in the best interests of the estate. *See e.g., In re Chateaugay Corp,* No. 86–B–11270, order at 2, (Bankr.S.D.N.Y. March 11, 1988); *In re Revere Copper & Brass, Inc.,* 58 B.R. 1, 2–3 (Bankr.S.D.N.Y.1985); *In re Allegheny Int'l, Inc.,* 100 B.R. 241, 243–44 (Bankr.W.D.Pa.1988) (rescinding earlier denial of approval of claims assignments but imposing strict claims assignment guidelines under Bankruptcy Rule 3001(e)(2)).

Moreover, the Assignment as originally submitted under which Marriott retains a portion of the claims assigned is not susceptible to a full and complete substitution of Amroc for Marriott. The result is the potential bifurcation of rights, including voting rights and distribution rights, with respect to the Claim which violates both the Chapter 11 plan confirmation and voting procedures and Bankruptcy Rule 3001(e)(2).

■ The issue now before this Court is whether Marriott's Supplemental Application to conform the Claims to the Debtor's schedules cures the original partial assignment of claims problem.

■ Amroc asserts several reasons why it believes that the withdrawal of the Claims by Marriott will not prevent the splitting of claims. First, while Marriott states that the assignment to Amroc of the Claims under the Assignment Agreement is "unconditional," Marriott fails to disclose that Amroc has the right to require Marriott to repurchase Claims in whole or in part. Such right arises if

all or any portion of the Claims are *the subject of any objections* to disallow, reduce, subordinate, offset, or require repayment in any amount for any reason whatsoever, or if all or any portion of the Claims are the subject of any legal or equitable defenses, counterclaims or preference actions asserted for any reason whatsoever by or on behalf of the Debtor to reduce the amount of the Claims in the Bankruptcy Proceedings.

[Assignment Agreement at 5; Emphasis Added].

Amroc argues that if a mere objection were made (there is no requirement that the objection be sustained) and Amroc exercised this right, Marriott would be unconditionally obligated to repurchase the portion of the Claims subject to objection. Consequently, if less than all of the Claims were repurchased by Marriott, the Claims which are the subject of the Assignment Agreement once again would be split between Amroc and Marriott. Amroc's assertion in this regard in unpersuasive.

The clause affecting the contractual relationships among buyer/seller, assignor/assignees, to which Amroc refers is boiler plate language and has been contained in almost every claim assignment contract presented to this Court for approval. The possibility that some time in the future, portions of scheduled claims might be objected to and transfer back to the assignor

by the assignee is not tantamount to the assignee selectively assigning portions of its currently filed claims.

 Second, Amroc contends that Marriott in its Supplemental Application has expressly reserved its rights to recover from third party obligors the Proposed Withdrawn Claims. Payments to Marriott by such third parties may entitle third parties to rights of subrogation under § 509 of the Code, again effectively splitting Marriott's claims against Eastern, this time between Amroc and third party obligors. However, Amroc's analysis in this regard is incomplete. Third party obligors would have subrogation rights under § 509 of the Code whether or not Marriott withdrew its claims against Eastern. Thus, the withdrawal of claims would not have any effect upon third party obligors' claims against Eastern. Moreover, the "splitting of claims" which would result from the exertion of third party obligors' subrogation rights is not the kind of splitting of claims to which the Court's policy refers *i.e.*, one claim; one vote; one distribution.

 Finally, Amroc contends that Marriott's attempt to obtain Court approval of the Assignment Agreement at this late date not only violated Amroc's rights under the Option Agreement but also evidences Marriott's lack of good faith in dealing with Amroc. Both parties to this dispute are sophisticated institutions and therefore there is no need for this Court to scrutinize this transaction in order to protect either party from the benefit or burdens of its bargain. Consequently, Amroc's reference to two cases in which the courts refused to approve ministerially the transfer of claims where the transfer could visit an injustice on one of the parties to the transfer, *see, In re Allegheny Int'l. Inc.*, 100 B.R. 241 (Bankr.W.D.Pa.1988); *In re Revere Copper & Brass, Inc.*, 58 B.R. 1 (Bankr.S.D.N.Y. 1985), are inapposite.

The question as to whether Marriott breached the Option Agreement by withdrawing the additional portions of the Assigned Claims need not be decided by this Court in order to ascertain whether the Assignment as it now stands is "uncondi-tional" pursuant to the language and intent of Bankruptcy Rule 3001(e)(2). Consequently, any cause of action Amroc may have against Marriott is a matter between two non-debtors, unrelated to these bankruptcy cases and is therefore beyond the scope of bankruptcy court jurisdiction. The dispute among these non-debtor claim traders does not involve property of the estate, does not affect the administration of the estate, and the resolution of the inter-creditor dispute will not affect the recovery of creditors generally under a plan. *See, In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987). *See also, In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987); *In re Texaco, Inc.*, 85 B.R. 934 (Bankr.S.D.N.Y. 1988). *Compare, In re Chateaugay Corp. (The LTV Corp. v. The Aetna Casualty & Surety Company)*, 116 B.R. 887 (Bankr.S. D.N.Y.1990) (this Court held, *inter alia*, that based on the unique circumstances of the dispute where a declaratory judgment was sought to resolve a dispute between non-debtor parties, federal bankruptcy court jurisdiction existed.)

However, it should be noted that given the current anticipated return on general unsecured claims in these cases, this Court finds it difficult to imagine that Amroc cares that it will be unable to exercise an overvalued option at $.83 to the dollar under the Option Agreement. Amroc's statement that it is hopeful that at such time as the Court allows the Option Claims the market price will exceed the exercise price not only directly contradicts its later accusation against Marriott that Marriott is somehow taking advantage of market conditions to the detriment of Amroc in seeking approval of the Assignment now, but is also slightly disingenuous. If Amroc is hopeful that the claims' market price will increase above $.83, then it cannot accuse Marriott of taking advantage of market conditions. Likewise, if Marriott is harming Amroc by expecting it to comply with its agreement to buy claims for $.83 then it cannot be heard to express an interest in exercising its option under the Option Agreement. Given these inconsistencies in

Amroc's position, it is difficult to take seriously either of these arguments.

Moreover, Amroc states that in the face of a declining market, prompt approval would have enabled Amroc to resell the claims and limit its losses. However, there is nothing in the Assignment which precluded Amroc from attempting to address the concerns of this Court and seek an earlier approval of the Assignment. Indeed, Amroc has even stated that it would like nothing less than a declaration from this Court that all of the claims purchased by Amroc in the Eastern case may be rescinded because they are partial assignments.

Based on the foregoing discussion this Court finds that the Assignment as modified by the Supplemental Application satisfies the "unconditional" transfer language and intent of Bankruptcy Rule 3001(e)(2). Accordingly, this Court has simultaneously entered an Order approving the Assignment as modified from Marriott to Amroc.