United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 96-2996MN

| | | |
|---|---|---|
| In re Hugo Olson and Jeraldine Olson, | * | |
| | * | |
| | * | |
| Debtors | * | |
| | * | |
| -------------------------------- | * | |
| | * | |
| Viking Associates, L.L.C., | * | On Appeal from the United |
| | * | States District Court |
| Appellant, | * | for the District of |
| | * | Minnesota. |
| v. | * | |
| | * | |
| | * | |
| Wayne Drewes, Trustee, and | * | |
| Barbara G. Stuart, U.S. Trustee, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  May 22, 1997

Filed:  July 10, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and MORRIS SHEPPARD ARNOLD,  Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

This case arises out of the efforts of Viking Associates, L.L.C., to purchase all of the unsecured claims against the bankruptcy estate of Hugo and Jeraldine Olson. The Bankruptcy Court held that Viking used fraudulent means to convince creditors to sell Viking their claims against the estate, and that Viking's purchase of all the unsecured creditors' claims and subsequent attempt to dismiss the bankruptcy proceeding was an abuse of the bankruptcy process. The Court disallowed the transfer of the claims above the amount that Viking paid for them and subordinated the allowed portion of Viking's claims purchase to the claims of the unsecured creditors. On appeal, the District Court affirmed the order of the Bankruptcy Court. Because the Bankruptcy Court lacked the authority to enjoin the claims transfers without a timely objection from the transferors, we reverse the judgment and remand this proceeding to the District Court with instructions to reverse the order of the Bankruptcy Court.

I.

In late 1991, Hugo and Jeraldine Olson filed a joint petition for Chapter 7 relief. The estate's only significant asset was Jeraldine Olson's 38.8 per cent. interest in a partnership whose major asset is the Viking Plaza Shopping Center.[1] The Olsons' four adult children and two unrelated individuals also own shares in the partnership. Viking Associates, which is owned by the Olson children, manages the shopping center. This case is about Viking's and the Olson children's attempts to acquire the estate's interest in the partnership. The Olson children, represented by Viking, initially attempted to purchase the partnership interest directly from the estate. Their offers ranged from $175,000 to $277,000. The trustee proved to be a tough negotiator, and the two sides never agreed upon a price. In late 1994, the trustee refused to accept any further offers for the sale of the property until Viking provided a complete financial disclosure

---

[1]At the time of the filing of the bankruptcy petition, Hugo Olson owned a 40.8 per cent. share in the partnership. For tax reasons unrelated to this case, the bankruptcy trustee has since abandoned the estate's interest in Hugo Olson's share.

statement for the partnership. Viking provided the trustee with the statement, resulting in a final offer from the trustee of $410,000, but Viking made no further efforts to purchase the partnership interest from the estate.

At the beginning of 1995, Viking shifted its approach and started to purchase all of the unsecured claims against the estate from the estate's creditors. By that time, the filed unsecured claims against the estate totaled $525,000. Viking purchased these claims and all other unsecured claims against the estate, both filed and unfiled, from twenty creditors for a total of $67,000.[2] After it had purchased all of the claims, it moved in July, along with Jeraldine Olson, to dismiss the bankruptcy case, so it could then acquire the partnership interest directly from her.[3] At a hearing in August, the Bankruptcy Court declined to dismiss the case and ordered the clerk not to substitute Viking Associates for the names of the unsecured creditors on the claims register. Two months later, the Court approved the sale of the partnership interest to a third party for $455,000, an amount which will, according to the bankruptcy trustee, yield a distribution of $225,849 to the unsecured creditors.

At an evidentiary hearing in October 1995, the Bankruptcy Court issued the order that is the subject of this case. It held that Viking had abused the bankruptcy

---

[2]Viking points out that Twin City Federal had also filed an unsecured claim against the estate for $1.8 million as Viking was acquiring the claims of the unsecured creditors. Viking argues that it "was taking the risk that it would not be able to convince TCF not to assert its claim against the estate." Appellant's Br. 11 n.33. Because our resolution of this appeal does not turn on the disparity between what Viking paid for the unsecured claims and what they might ultimately be worth in the context of the bankruptcy proceeding, we accept the Bankruptcy Court's finding that "no one seriously considered [the TCF] claim to be unsecured" and, therefore, that Viking faced little real risk from the Twin City Federal claim. In re Olson, 191 B.R. 991, 995 n.4 (Bankr. D. Minn. 1996).

[3]Hugo Olson died two weeks before Viking and Jeraldine Olson moved to dismiss the bankruptcy case.

process by purchasing all of the claims against the estate at a fraction of what they were worth, despite "having special knowledge of the value of the assets," in order to join with the debtor to have the bankruptcy proceeding dismissed. 191 B.R. at 1000. To make matters worse, the Court found, Viking obtained many of the claims from the creditors by providing them with false, misleading, and incomplete information. The Court allowed the transfer of the claims only up to the amount of the purchase price and then subordinated Viking's claims to the claims of the unsecured creditors. In all likelihood, the practical result of the Court's order, if allowed to stand, would be that Viking would receive nothing in exchange for the $67,000 that it spent to purchase the claims of the unsecured creditors. The District Court affirmed the Bankruptcy Court's order, and this appeal followed.

## II.

As an initial matter, we disagree with the bankruptcy trustee's contention that we lack jurisdiction to hear this appeal. Courts of appeals in bankruptcy cases have jurisdiction only of "appeals from all final decisions, judgments, orders, and decrees" of district courts hearing bankruptcy appeals. 28 U.S.C. § 158(d). If the Bankruptcy Court had wholly disallowed the claims transfers in this case, there would be no question that we would have jurisdiction over this appeal. Such an order would effectively have ended Viking's role in the proceeding by determining that it had no claims against the estate. The fact that the bankruptcy proceeding would be far from over with respect to its other participants would not alter the fact that it is final as to Viking. See In re Bestmann, 720 F.2d 484 (8th Cir. 1983) (dismissal of appellant's suit to reclaim property an appealable final order); see also In re Leimer, 724 F.2d 744 (8th Cir. 1984). "[A]s long as an order allowing a claim or priority effectively settles the amount due the creditor, the order is 'final' even if the claim or priority may be reduced by other claims or priorities." In re Saco Local Development Corp., 711 F.2d 441, 448 (1st Cir. 1983); see also In re Moody, 849 F.2d 902, 904 (5th Cir.) (decision allowing

claim against bankruptcy estate is an appealable final order), <u>cert. denied</u>, 488 U.S. 967 (1988).

Viking's continuing stake in the proceeding, however, complicates the question. The Bankruptcy Court has not yet determined the allowability of Viking's claims against the estate and, therefore, the amount that the estate owes Viking. As a practical matter, however, we believe that the order of the Bankruptcy Court effectively forecloses Viking from any share, as a creditor, in the estate. There are two aspects to the order of the Bankruptcy Court: partial disallowance of the transfer of claims to Viking, and subordination of that portion of the claims whose transfer is allowed. When these two factors are combined, and when the likely amount to be distributed to creditors in the end is considered, it is virtually certain that Viking will, as a result of the order of the Bankruptcy Court, receive nothing from the estate. Furthermore, the order of the Bankruptcy Court finally determines the ownership of the claims. The issue of claim ownership is a contractual dispute separate from the question of the claims' validity or priority, for it determines who may pursue the claims against the estate in the first place. For these reasons, we conclude that the order determining Viking's rights in this case is "final" for purposes of 28 U.S.C. § 158(d).

III.

We now reach the issue of whether the Bankruptcy Court properly issued the challenged order in this case. In 1991, Bankruptcy Rule 3001(e)(2) was amended "to restrict the bankruptcy court's power to inspect the terms of" claims transfers. <u>In re SPM Mfg. Corp.</u>, 984 F.2d 1305, 1314 n.9 (1st Cir. 1993). The rule provides that

> If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by

mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

In this case, none of the unsecured creditors filed a timely objection to the transfers. Indeed, no creditor has challenged any of the transfers to this day. Under these circumstances, Rule 3001(e)(2) requires the court to issue an order substituting Viking for the unsecured creditors as the owners of the claims against the estate.

The language of the rule is mandatory and directs the court to substitute the name of the transferee for that of the transferor in the absence of a timely objection from the transferor. Further, the Advisory Committee Note (1991) states that the purpose of the amended rule is "to limit the court's role to the adjudication of disputes regarding transfers of claims." The text of the rule makes clear that the existence of a "dispute" depends upon an objection by the transferor. Where there is no dispute, there is no longer any role for the court.

Appellees find the authority to enjoin claims transfers in 11 U.S.C. § 105(a), which authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[4] The Court's powers

_____

[4]The statute also provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." This case, however, turns on Bankr. R. 3001(e)(2), which we quote above, and that rule is not a "provision of . . . title" 11. Nor do we see any "abuse of process" on the part of Viking here. Viking and the Olson children simply pursued their own economic self-

under this section are broad but not unlimited. "While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." Official Comm. of Equity Sec. Holders v. Mabey, 832 F.2d 299, 302 (4th Cir. 1987), cert. denied, 485 U.S. 962 (1988).

The differences between the prior rule and the current rule provide additional support for this conclusion. "Prior to 1991, some courts interpreted [Bankruptcy] Rule 3001 as authorization for courts 'to monitor the manner in which claims are transferred or assigned and thereby prevent, inter alia, the improper proliferation of claims, wrongdoing and inequitable conduct.'" In re SPM Mfg. Corp., 984 F.2d at 1314 n.9 (1st Cir. 1993) (quoting In re Ionosphere Clubs, Inc., 119 B.R. 440, 443 (Bankr. S.D.N.Y. 1990)). The prior rule required transferees to file evidence of the terms of the claims transfer with the court. Any objections to the transfer had to be filed within 20 days of the notice of the transfer or "within any additional time allowed by the court." Moreover, under the old rule, "[i]f the court finds, after a hearing on notice, that the claim has been unconditionally transferred, it shall enter an order substituting the transferee for the original claimant, [sic] otherwise the court shall enter such order as may be appropriate." The prior rule thus envisioned that the Bankruptcy Court had a role to play in every claims transfer. Under the new rule, however, this is no longer the case.

---

interest. If they made misrepresentations to their assignors, the wronged parties could have objected to the Bankruptcy Court, or could have pursued their remedies under nonbankruptcy law, as by suing to rescind the transfer of the claims in any court- presumably a state court - with jurisdiction. The claims transferors have taken neither of these steps. We think people should be allowed to decide for themselves whether to seek redress for an alleged injury.

Since no unsecured creditor objected to the transfers in this case, the Bankruptcy Court had no authority to disallow the transfers. Accordingly, we reverse the District Court's judgment affirming the order of the Bankruptcy Court and remand this case to the District Court with instructions to reverse the Bankruptcy Court's order and remand the case to that Court for further proceedings consistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.