MAJOR ELECTRICAL SUPPLIES, INC.,
a Florida Corporation, Plaintiff,

v.

J. W. PETTIT CO., a Florida Corporation,
and the United States of
America, Defendants.

No. 75–316–Orl–Civ–R.

United States District Court,
M. D. Florida,
Orlando Division.

Feb. 18, 1977.

Rupert Jasen Smith, of Smith, Brennan & Muschott, Fort Pierce, Fla., for plaintiff.

John V. A. Holmes, of Lovett, Kreuter & Holmes, Richard S. Rhodes, Orlando, Fla., for defendant J. W. Pettit Co.

Rodger M. Moore, Atty., Tax Div., Dept. of Justice, Washington, D. C., Mark L. Horwitz, Asst. U. S. Atty., Orlando, Fla., for defendant United States.

## MEMORANDUM OF DECISION

REED, District Judge.

The plaintiff, Major Electrical Supplies, Inc. ("Major"), filed an amended complaint against the defendant J. W. Pettit Co. ("Pettit") and the United States ("Government") on 17 May 1976. Pettit has filed an answer and a counterclaim. The Government has answered. The pleadings put in issue the right as between Major and the Government to a fund in the amount of $10,244.33 held by Pettit.

The facts agreed to by the parties in the pre-trial stipulation and demonstrated by the evidence at trial are as follows. Sometime prior to 19 November 1973, a corporation by the name of Famco Electric, Inc. ("Famco") entered into a contract with Pettit to furnish Pettit the labor and materials required for the electrical work on a construction project then being performed by Pettit in Brevard County, Florida. See plaintiff's Exhibit 4.

On 19 November 1973, Famco executed a written assignment to Major of the right to receive $7,476.00 which was due Famco under the contract with Pettit. See plaintiff's Exhibit 2. At the time of the assignment, the $7,476.00 had been earned by Famco by its performance under the contract. Subsequent to the assignment, additional work was performed by Famco on completion of which it became entitled to the final payment of $10,244.33 which includes the amount assigned. Although Famco substantially completed the work under the contract on or about 20 November 1973 final completion occurred in or about March 1974. See plaintiff's Exhibits 3, 7 and 8.

In order to protect its assignment, Major gave Pettit written notice thereof. The notice was received by Pettit on or before 14 December 1973. At the time of the assignment Famco owed Major $11,902.63. This debt arose out of Major's having supplied materials on open account to Famco for use in the latter's contract with Pettit. The purpose of the assignment was to assure Major at least part payment of this account, to induce Major to continue dealing with Famco on open account, and (inferentially) to refrain from legal proceedings to collect the debt no part of which had been paid by the time of trial. No question has been raised as to the validity of Major's debt. The assignment has never been filed in the manner provided by the Florida Uniform Commercial Code, Florida Statutes § 679.9–401, F.S.A.

The Government filed in the public records of Brevard County, Florida, Notices of Federal Tax Lien against Famco on 29 January 1974 and 14 March 1974 in the amounts of $30,164.66 and $9,050.69, respectively. Additionally, a Notice of Levy was served by the Government on Pettit on 16 December 1975 for the aggregate of the taxes shown in the notices of lien. The parties have stipulated that Famco owes the Government $39,486.71 plus interest and penalties by reason of the assessments on which the notices of lien are based.

Petit admits that $10,244.33 is due Famco under the construction contract and seeks to interplead the Government and Major who have conflicting claims to the fund. The court, therefore, has treated this action

as one in the nature of an interpleader with its subject matter jurisdiction attaching under 28 U.S.C. § 2410. The issue, of course, is whether Major is entitled to receive from the fund the value of its assignment as against the Government's claim for the entire fund based on the recorded tax liens.

Cases decided under the 1939 Internal Revenue Code developed the principle that state law governs the nature of the taxpayer's interest in the property subject to lien, but the priority of competing liens is determined by federal law. *Aquilino v. United States*, 1960, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365. The 1954 Internal Revenue Code significantly altered the relevant portions of the 1939 Code. It required the recording of notices of tax lien and deferred the lien's effectiveness as against other interests until such recording was accomplished. Section 6323(a) of the Internal Revenue Code of 1954 provides as follows:

". . . Except as otherwise provided in subsection (c), the lien imposed by Section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate . . ."

Cases administering this provision held that interests which arose prior to the recording of a federal lien took priority over the federal lien if the prior interests were sufficiently perfected "in the federal sense." What is meant by perfection in the federal sense is illustrated by *United States v. Pioneer American Insurance Co. et al.*, 1963, 374 U.S. 84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770. There the Supreme Court held that a mortgagee's lien for attorney's fees in the event of foreclosure was not sufficiently perfected at the time tax liens were filed because at that time the amount of the attorney's fees had not been established. The court stated (p. 88, 83 S.Ct. p. 1655):

"As for a lien created by state law, its priority depends 'on the time it attached to the property in question and became choate,' . . . And it is a matter of federal law when such a lien has acquired sufficient substance and has become so

perfected as to defeat a later-arising or later-filed federal tax lien. . . . *The federal rule is that liens are 'perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'*" (Emphasis added)

For another application of this principle, see *Fore v. United States*, C.A.5, 1964, 339 F.2d 70, wherein the Court of Appeals held under the 1954 Code that a recorded federal tax lien had priority over a Texas judgment creditor who under local law had no lien by virtue of the judgment on the property in question. See also *United States v. Morrison*, C.A.5, 1957, 247 F.2d 285.

Under the test delineated in *Pioneer*, the prior interest of Major was clearly choate by the time the tax liens were recorded. The lienor's identity was obvious, the property subject to the lien was also obvious, i. e. the fund under the contract between Famco and Pettit, and the amount of the lien was expressly established by the assignment itself. The 1966 amendments to Section 6323 of the Internal Revenue Code have, however, injected different considerations on which Major's right must depend. Under the 1966 amendment, Section 6323(a) was amended to include the words "a security interest" in the catalog of those interests which when prior in time are protected against a subsequently recorded federal tax lien. The amendments also added to Section 6323 a provision carefully defining "a security interest" and establishing a date for the attachment of its priority. This is subsection (h)(1) and it reads as follows:

". . . The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at

such time, the holder has parted with money or money's worth."

The effect of subsection (h)(1) is to supplant the judicial definitions of choateness with a specific legislative definition. The priority of competing liens must still be determined by federal law, but the criteria for priority is now, insofar as security interests are concerned, statutory. Thus, under subsection (h)(1) a prior security interest is protected against a later recorded tax lien when, at the time of the recording of the tax lien, the property subject to the prior interest is in existence and the prior interest therein ". . . has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation . . .".

The property which is at issue in this case is the contract right to receive the funds to be paid under the contract between Famco and Pettit. This right was in existence at the time of the assignment by Famco to Major by virtue of Famco's performance under the contract with Pettit. The security interest, at the time of the assignment, was protected under the law of Florida against a subsequent judgment lien against Famco arising out of an unsecured obligation because under Florida law, as between an assignor and an assignee, there is no requirement that an assignment be recorded to be valid (see Florida Statutes § 679.9–201, F.S.A.) and a judgment lien does not attach to an intangible interest such as the right to receive the payment of a debt. Thus, Major's right to receive payment under the Pettit-Famco contract could not be disrupted under Florida law by the lien of a judgment against Famco. See *Peninsula State Bank v. United States*, Fla. 1968, 211 So.2d 3, 5, wherein the court held:

". . . In other words, insofar as what we call a 'simple judgment creditor' is concerned, there is simply no such thing as a judgment lien against an account receivable in this state. The only way a simple judgment creditor can reach an account receivable owed to his debtor is by way of a separate and independent judicial proceeding to establish the debt

and collect for himself the amount due thereon—either by way of garnishment proceedings or, in a proper case, by a suit brought in his own name by the assignee thereof."

See also *Willard v. Petruska*, C.A.5, 1968, 402 F.2d 756, for a similar opinion as to the effect of a judgment lien under Florida law. The Florida statutes on which *Peninsula* and *Willard* were based, Florida Statutes 56.061, 56.09, and 56.11, are in effect in Florida and were in effect at all times material to this litigation. On the basis of the foregoing, the court concludes that under Section 6323(a) and (h)(1), Title 26, United States Code, the interest of Major was perfected in the federal sense prior to the recording of the Government's tax liens and, therefore, has priority over those liens with respect to the fund in question.

The Government contends that it should have priority because Major's assignment was not perfected under local law. As pointed out above, Major did not file its assignment in the manner provided by the Florida Uniform Commercial Code, Florida Statutes § 679.9–401, F.S.A. Under Florida law, such a failure does not invalidate the assignment, but allows a lien creditor without knowledge of the security interest to take priority. See Section 679.9–301, F.S.A. The filing requirement of the Uniform Commercial Code is designed to protect persons who, in dealing with a debtor, part with something of value on the basis of the state of local public records. Obviously, the Government is not in the position of such a person, and it would thus be unfair to allow the Government to take advantage of the recording provision. But aside from this consideration, the application of local law as urged by the Government overlooks the well-established principle that priority is determined not by local law but by federal law and, in the present case, by federal statutory law.

A decision by the Eighth Circuit in the case of *United States v. Trigg*, C.A.8, 1972, 465 F.2d 1264, 1269, supports the position the Government has taken. In *Trigg*, the Court of Appeals held that an assignment

to a bank which was not recorded in accordance with the provisions of the Arkansas Uniform Commercial Code did not take priority over a subsequently recorded federal tax lien in a contest for proceeds due the assignor under a construction contract. The Court said:

". . . At the time the United States assessed the contractor's tax liability, the bank's security interest was not specific and perfected, in the federal sense, because filing was required to protect the security interest against third party creditors."

Respectfully, it seems the assumption by the Eighth Circuit that filing was required for perfection "in the federal sense" is erroneous because it overlooks the specific provisions of Internal Revenue Code Section 6323(h)(1) which clearly state when a security interest exists in the federal sense for the purpose of adjudicating questions of priority.

Pettit has paid into the registry of the court $9,494.33. Upon the filing of this memorandum decision, Pettit shall pay the balance of the fund into the registry of this court to await further order of this court, that balance being $750.00.

■ The funds should ultimately be distributed $7,476.00 to Major and the balance to the Government, except to the extent the court makes provision for payment of attorney's fees from the fund. Pettit has requested attorney's fees to be paid from that part of the fund to be awarded to Major. In this unusual case, it appears appropriate that Pettit should receive a reasonable attorney's fee from that portion of the fund to be paid to Major. Pettit has filed in the record an affidavit stating the amount it considers to be reasonable for an attorney's fee. Within seven days from the date of this decision, Major shall serve and file in this cause a memorandum stating whether it desires oral argument on the application of Pettit to receive an attorney's fee and the amount of same. Major shall accompany such memorandum with any affidavits it desires to submit dealing with the amount of a reasonable attorney's fee.

The entry of final judgment will be deferred until the issue of the attorneys' fees has been resolved.