**GTE DIRECTORIES CORPORATION,
Plaintiff,**

v.

**AD–VANTAGE TELEPHONE
DIRECTORY, etc., et al.,
Defendants.**

No. 91–1735–CIV–T–25(B).

United States District Court,
M.D. Florida,
Tampa Division.

April 4, 1995.

Order Denying Motion to Alter
or Amend Judgment April 27, 1995.

James J. Kenny, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, P.A., Miami, FL, for GTE Directories Corp.

Jawdet I. Rubaii, Law Office of Jawdet I. Rubaii, Clearwater, FL, John R. Ferguson, Swidler & Berlin, Washington, DC, for Ad-Vantage Telephone, Swidler and Berlin, Jawdet I. Rubaii, PA.

Maxine Master Long, Shutts & Bowen, Miami, FL, for Chesapeake & Potomac Telephone Co. of Maryland, Chesapeake & Potomac Telephone Co. of Virginia, Chesapeake & Potomac Telephone Co.

Patricia E. Bergum, Ill. Bell Telephone Co., Chicago, IL, for Ill. Bell Telephone Co.

David N. Geier, U.S. Dept. of Justice, Tax Div., Washington, DC, for I.R.S.

Thomas E. Cunningham, Thomas E. Cunningham, Jr., P.A., Tampa, FL, for L.M. Berry And Co.

## OPINION

THOMAS G. WILSON, United States Magistrate Judge.

This is an interpleader action which now requires resolution of competing claims to a fund deposited in the registry of this court.[1] Four defendants have filed motions for summary judgment in support of their claims (*see* Docs. 8, 22, 31, 50, 72, 81). Upon consideration of the parties' submissions, and the argument of counsel, I conclude that $464,-023.83 should be awarded to Swidler and Berlin, Chartered, and Jawdet I. Rubaii, P.A., as a result of their attorneys' charging lien. The remainder should be paid to the United States on the basis of its federal tax liens.

## I.

The plaintiff in this interpleader action, GTE Directories Corporation ("GTEDC"), is a defendant in a separate lawsuit in this court styled *Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corporation*, Case No. 82–968–CIV–T–21(B). In that case, Ad–Vantage was awarded $500,000 in punitive damages on a tort claim. Because the defendant prevailed on a counterclaim and was awarded $208,000, Ad–Vantage's net recovery for the punitive damages claim was $292,000. Although Ad–Vantage's claim for compensatory damages is still not resolved, the court of appeals has sustained the award of punitive damages.

After the court of appeals upheld the punitive damage award, GTEDC filed this interpleader action, alleging that Ad–Vantage had several liens and judgments against it and that GTEDC, which was fearful of multiple lawsuits, did not know to whom to pay the money owed Ad–Vantage. With the complaint, GTEDC deposited into the court's registry $467,549.85, which represented the net award of $292,000, plus interest from the date of the judgment. The fund has now appreciated to approximately $500,029 while on deposit with the court. Four named defendants have subsequently come forward asking to be paid out of the fund.

The first claimants seeking payment were Swidler and Berlin, Chartered, and Jawdet I. Rubaii, P.A., the attorneys for Ad–Vantage in the underlying litigation. Their claim is based upon an attorneys' lien under Florida law that arises from their successful efforts in recovering damages (Doc. 9, pp. 8–10). In their view, their lien dates from June 1983, the time when they began their representation of Ad–Vantage (*id.* at p. 9).

---

1. The parties have all consented to disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. 636(c). Consequently, an Order of referral was entered by the United States District Judge (Doc. 92).

The next defendant to affirmatively make a claim to the fund was Michigan Bell Telephone Company (Doc. 22). Michigan Bell's claim was based upon a judgment dated October 26, 1984, in the amount of $35,348.52, plus interest at 6% from February 2, 1984, and costs of $80. Michigan Bell asserts further that it received from Ad–Vantage a partial assignment, dated November 12, 1987, of proceeds Ad–Vantage was to receive from GTEDC (Doc. 51). Michigan Bell initially asserted that this assignment gave it priority over the claim by Ad–Vantage's attorneys (*id.*). However, Michigan Bell subsequently withdrew its opposition to the entry of summary judgment in favor of Ad–Vantage's counsel (Doc. 87).

The third claimant to the fund is the United States. Its claim is based upon notices of federal tax liens which were filed in March 1992 against Ad–Vantage as nominee/alterego of Joel V. Blumberg (Ad–Vantage's owner and operator) (Doc. 50). The notices reflect federal tax liens against Blumberg for tax assessments between 1980 and 1988 exceeding $800,000 (Doc. 50, Exs. 1, 2). The Government's summary judgment motion acknowledged a superpriority under the Federal Tax Lien Act for the lien of Ad–Vantage's attorneys (Doc. 50, Memo, pp. 8–9). *See* 26 U.S.C. § 6323(b)(8). The Government, however, objects to the amount of the attorneys' claim (Doc. 83). The Government, moreover, argues that under federal law its claim is second in priority to the attorneys' lien (Doc. 50, Memo, pp. 6–8).

The final claimant is L.M. Berry and Company. Its claim is based upon a final judgment obtained against Ad–Vantage on March 14, 1984, in the amount of $15,068.12 with 12% interest from February 28, 1983, and costs of $88.50 (Doc. 81).

Each of the four claimants has filed a motion for summary judgment in support of a claim to be paid from the fund. On March 15, 1995, the four claimants were afforded an opportunity to argue their respective motions.

## II.

At the hearing, the parties agreed that the disbursement of the fund was properly handled by summary judgment. Thus, they all concurred that there was no material factual dispute that needed to be resolved in order to decide the various claims to the fund. *See* Rule 56(c), Fed.R.Civ.P. There also was no dissent to the proposition that the priority of any claim competing with a federal tax lien is governed by federal law, while the relative priority among the non-governmental liens is determined by state law.

■ The parties, moreover, agreed at the hearing that the attorneys' lien of Ad–Vantage's lawyers was entitled to first priority. Under Florida law, if an attorney secures a judgment for a client, the attorney is entitled to a lien against that judgment, and that lien relates back to the time when the attorney first began representing the client in the action that produced the judgment. *Miles v. Katz*, 405 So.2d 750, 752 (Fla.App.1981). Under the Federal Tax Lien Act, a federal tax lien is not valid "[w]ith respect to a judgment ..., as against an attorney who, under local law, holds a lien upon ... such judgment ..., to the extent of his reasonable compensation for obtaining such judgment...." 26 U.S.C. § 6323(b)(8). Consequently, as the other claimants acknowledge, the lien of the lawyers for Ad–Vantage is superior to the competing liens.

■ The Government and Michigan Bell, however, challenge the amount of the attorneys' lien. One of the Government's contentions is that the attorneys' lien is limited to the net recovery amount of $292,000. In other words, the attorneys' lien does not attach to any of the interest component of the amount deposited with the court.

The Government, however, has not submitted any Florida decisions in support of this contention, the only case cited (*Gay v. McCaughan*, 105 So.2d 771 (Fla.1958)) being inapposite. Moreover, the Government has not submitted any cogent reason why the attorneys' lien should not attach to all of the funds owed to Ad–Vantage by GTEDC under the judgment. The entire fund, not just $292,000, was clearly created by counsels' efforts. Furthermore, during much of the time that interest was accruing, the attorneys were fighting to protect the judgment.

Particularly in light of that circumstance, it is unreasonable to conclude that the attorneys' lien is limited to the net recovery of $292,000.

■ Challenges were also made to the various elements of the attorneys' claim. At the hearing, the claim was said to consist of a fee of ⅓ of the $500,000 award, expenses of $297,357.16, and interest. The Government argues, with respect to the fee claim, that the fee should be limited to ⅓ of the net recovery of $292,000. The answer to this argument is that Joel Blumberg, the client, has agreed that the fee should be computed as ⅓ of $500,000 (Doc. 86, Ex. 1).

It is recognized that the Federal Tax Lien Act only allows a superpriority for attorneys' liens "to the extent of [their] reasonable compensation." 26 U.S.C. § 6323(b)(8). In light of the extensive and protracted litigation in this case, it is clear that a fee of ⅓ of $500,000 ($166,666.67) plainly does not exceed the range of reasonableness. Thus, the attorneys are entitled to be awarded that amount from the fund.

■ The attorneys, as indicated, also ask reimbursement for expenses in the total amount of $297,357.16 (Doc. 67). The Government, as well as L.M. Berry (Doc. 80), objects to certain of the expenses claimed by the attorneys. Significantly, the Federal Tax Lien Act's superpriority for attorney's liens extends to reasonable expenses actually incurred. 26 U.S.C. § 6323(e)(3). Consequently, the Government does not contend that Ad–Vantage's lawyers cannot recover expenses. Rather, it and L.M. Berry argue that some of the claimed expenses are more properly characterized as office overhead expenses.

In some contexts, attorneys may not receive reimbursement for office overhead expenses because those expenses are thought to be covered by attorney's fees. Here, however, Blumberg agreed to pay expenses, in addition to an attorney's fee. Moreover, the expenses claimed were all billed to Ad–Van-

tage during the course of the litigation. Under these circumstances, the attorneys should be permitted to recover their itemized, billed expenses from the fund they created for Ad–Vantage. Significantly, although the underlying data were available for inspection, there has been no showing that a specific item of expense is excessive.[2]

■ The Government also objects to the expense claim of $41,936.10, which was submitted by a supplemental affidavit. It argues that these expenses were incurred after the fund was created. However, this fact provides no basis for concluding that the attorneys' lien does not cover these expenses. The expenses were incurred as part of the continuing litigation that gave rise to the fund. Thus, if the fund had been placed in the attorneys' trust or escrow account, there would be no question that the attorneys could be reimbursed out of the fund. No reason has been given why a different result is justified simply because the money was placed in the registry of the court. Accordingly, the attorneys should be permitted to recover the additional expenses.

■ At the hearing, the attorneys also sought recovery of interest on their fee and expenses. This claim, however, was not fairly asserted in the attorneys' motion for summary judgment. Thus, the motion and supporting memorandum were devoid of specifics about any claim, and were directed more to challenging the interpleader action than to itemizing the claim (Docs. 8, 9). The attorneys subsequently filed affidavits particularizing the expenses for which they sought reimbursement. There was not a similar submission regarding interest. Moreover, after the case progressed, the parties were afforded an opportunity to file amended motions for summary judgment (Doc. 70), but the attorneys did not do so.

Significantly, a claim for interest would be relatively complex. Thus, there are at least four possible interest rates that could apply:

2. L.M. Berry complains about travel and expert witness charges. Certainly, these types of expenses are recoverable. Berry's generalized complaint about the amount of these charges is insufficient; the parties were expressly cautioned that any objections to claims had to be specific

(see Doc. 70). If Berry wished to challenge the claims for travel or expert witness expenses, it was obligated to examine the underlying documentation and point out particular items that were improper. Since Berry did not do that, its objection will be rejected.

(1) a 12% prejudgment interest rate, *see* § 687.01, Fla.Stat.; (2) the variable interest rate established by the 1994 amendment to § 687.01; (3) the postjudgment interest rate set forth in the judgment; or (4) the interest rate applicable to the funds after deposit with the court. Moreover, different rates could arguably apply to different periods. Consequently, in making a claim for interest, the attorneys would be required to justify the rate they assert is applicable. As indicated, no such presentation was made.

It is recognized that the attorneys discussed interest in response to the Government's objection to the extent of the attorneys' charging lien (Doc. 86, pp. 12–14). This response does not suffice to constitute an affirmative claim for interest. In the first place, a reply memorandum is not the proper vehicle to raise the claim for interest. Moreover, the attorneys' discussion of interest was in response to the Government's contention that the interest component of the fund (*i.e.,* the amount over $292,000) was not subject to the attorneys' lien. The Government's contention is clearly different than an argument that the attorneys were not entitled to interest on their fee and expenses. Since it is natural to assume that the attorneys were attempting to answer the Government's argument, the attorneys' response to the Government's argument is not fairly read as a distinct claim for interest. As reflected at the hearing, neither the other claimants nor I construed the attorneys' papers to assert a claim for interest on the fee and expenses. This reading was induced, furthermore, by the attorneys' reference only to the post-judgment interest rate of 7.91%, an interest rate that would seem to have no application to a claim for interest on the fee and expenses.

For these reasons, therefore, the attorneys have not adequately set forth a claim for interest on the fee and expenses. On the other hand, they are entitled to recover from the fund a fee of $166,666.67 (⅓ of $500,000) and expenses of $297,357.16, for a total of $464,023.83.

## III.

Because the amount in the registry of the court exceeds the amount to be paid to the attorneys, it is necessary to consider the competing priorities of the other claimants. L.M. Berry, however, failed to articulate in its motion, or at the hearing, any basis for establishing priority over the federal tax liens. Consequently, it is only necessary to consider the claims of Michigan Bell and the United States.

Michigan Bell's claim is based upon an approximately $35,000 judgment entered on February 2, 1984, and, more importantly, upon a partial assignment on November 12, 1987, of proceeds Ad–Vantage was to receive from GTEDC. The Government's claim is founded upon notices of tax liens filed in March 1992. As previously indicated, the priorities of these two claims are governed by the Federal Tax Lien Act.

Under federal law, a lien arises on all of a taxpayer's property at the time an assessment of unpaid taxes is made. 26 U.S.C. §§ 6321, 6322. The lien is not valid, however, against a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice of the tax lien has been filed. 26 U.S.C. § 6323(a). Michigan Bell contends that its 1987 assignment gives it the status of a holder of a security interest and, therefore, priority over the 1992 tax lien notices.

The Federal Tax Lien Act provides the following definition of "security interest" (26 U.S.C. § 6323(h)(1)):

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

There is no question that the assignment comes within the statute's definition of "security interest," since it represented an "interest in property acquired by contract for the

purpose of securing payment." Moreover, the Government does not contend that the other conditions of the definition have not been met, with one exception: The Government disputes that "the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation."

The meaning of this rather abstruse phrase has been the subject of varying judicial opinions. *See Dragstrem v. Obermeyer*, 549 F.2d 20, 25–26 (7th Cir.1977). Fortunately, however, the Eleventh Circuit has recently announced its interpretation of the phrase. *In re Haas*, 31 F.3d 1081 (11th Cir.1994). In *Haas*, the court stated (*id.* at 1087):

> In interpreting the phrase "protected under local law against a subsequent judgment lien," courts and commentators have determined the phrase is equivalent to being protected against a "lien creditor" as defined in U.C.C. § 9–301(3). Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation*, § 54A.23 at n. 4 (1993). From this generally accepted interpretation of section 6323(h)(1), it has often been said that courts have diverged in employing the lien creditor test, some applying a "subjective knowledge lien creditor" test and some applying a "hypothetical judgment lien creditor" test. As discussed more fully below, we conclude that the "hypothetical judgment lien creditor" test is the appropriate test, and furthermore we doubt that the cases often cited as applications of the other test actually so hold. The "hypothetical judgment lien creditor test" focuses on the protection state law gives to the security interest against other hypothetical lien creditors. The pertinent inquiry is whether the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, regardless of whether the Government has knowledge of the competing nonfederal interest.

The court further explained (*id.* at 1089) (emphasis in original; footnote omitted):

> Accordingly, we conclude that the hypothetical judgment lien creditor test operates to put the IRS in the shoes of *any* subsequent judgment creditor, including the most favorable shoes. Thus, if any subsequent judgment creditor could prevail over [the security interest holder], then the IRS prevails.

In this case, the Government argues that a subsequent judgment creditor could prevail over Michigan Bell because Michigan Bell did not file a financing statement with the Secretary of State as provided by Florida's version of the Uniform Commercial Code. *See* § 679.401(1)(c), Fla.Stat. Michigan Bell does not assert that it did file a financing statement with the Secretary of State. Moreover, it does not dispute that, under that circumstance, a lien creditor (at least one without knowledge) would be entitled to priority over its unperfected security interest. *See* § 679.301, Fla.Stat.; *First Nat'l Bank of Valdosta v. Elgin*, 570 F.Supp. 849, 852 (N.D.Fla.1983); *Major Elec. Supplies, Inc. v. J.W. Pettit Co.*, 427 F.Supp. 752, 755 (M.D.Fla.1977). Rather, it simply relies on the conclusion of this court in *Major Elec. Supplies, Inc. v. J.W. Pettit Co., supra*, that under the definition of "security interest" in § 6323(h)(1) of the Federal Tax Lien Act, it was not required to record its security interest with the Secretary of State. The Eleventh Circuit's recent decision in *Haas* demonstrated that this court's construction in *Major Elec. Supplies, Inc.* of the security interest provisions was incorrect. Thus, the sole ground for Michigan Bell's claim for priority has been negated.

Due to Michigan Bell's failure to perfect its security interest, it is not entitled to the benefit of § 6323(a). As a result, the notices of tax lien filed in March 1992 afford the Government priority over Michigan Bell's assignment.[3]

---

3. Michigan Bell also seems to suggest that it is entitled to priority under § 6323(a) as a "purchaser." Because it never articulated any argument along that line, its suggestion does not warrant consideration. Nevertheless, it is appropriate to note that, since Michigan Bell was found to have a security interest (albeit an unperfected one), it cannot come within the definition of a "purchaser." *See* 26 U.S.C. § 6323(h)(6).

IV.

For the foregoing reasons, Ad–Vantage's attorneys are entitled to payment of $464,-023.83 from the fund. Accordingly, the Clerk of Court is directed to remit these proceeds to Swidler and Berlin, Chartered, (tax number 52–125–8991) at the following address:

Mr. John R. Ferguson, Esq.
Swidler & Berlin, Chartered
3000 K Street, N.W., Suite 300
Washington, D.C. 20007

The remainder of the fund, approximately $36,005, shall be paid to the United States. In light of this circumstance, it is unnecessary to resolve the priorities of the other claimants. The Clerk of Court, therefore, is directed to enter judgment accordingly and to close this case. All parties shall bear their own costs.

### ORDER

THIS CAUSE came on for consideration upon the Motion to Alter or Amend Judgment filed by defendant Michigan Bell Company (Doc. 100). Michigan Bell complains that the Court failed to consider its contention that it was a "purchaser" under 26 U.S.C. § 6323(a). As noted in the Court's Opinion, however, Michigan Bell did not articulate any argument along that line. A court's responsibility is simply to consider parties' arguments; it is not required to develop an argument for a party who merely hints at some legal theory. In any event, the Court in this case took Michigan Bell's hint and pointed out that Michigan Bell could not be a "purchaser" because it held a security interest. See 26 U.S.C. § 6323(h)(6). Consequently, it is, upon consideration

ORDERED:

That the Motion to Alter or Amend Judgment filed by defendant Michigan Bell Company (Doc. 100) be, and the same is hereby **DENIED.**

DONE and ORDERED.