**In re CROSSCREEK APARTMENTS, LTD., EI# 62–1196821, Debtor.**

**Bankruptcy No. 96–20170.**

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 19, 1997.

Thomas E. Cabaniss, Patrick L. Hayden, McGuire, Woods, Battle & Boothe, L.L.P., Norfolk, VA, for Walter F. Trent and Lynwood G. Willis.

Randal S. Mashburn, Baker, Donaldson, Bearman & Caldwell, P.C., Nashville, TN, for Condor One, Inc.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This single asset chapter 11 case is before the court on the motion of Walter F. Trent and Lynwood G. Willis (the "Partners") to designate class three ballots of Condor One, Inc. ("Condor") as not having been cast in good faith pursuant to 11 U.S.C. § 1126(e) and Condor's response in opposition thereto. A hearing was held on this matter in conjunction with a confirmation hearing on the Partners' and Condor's competing chapter 11 plans on May 22, 1997. Because the court does not conclude that Condor acted in less than good faith in purchasing and voting the four unsecured trade claims at issue, the motion will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(L).

### I.

On May 1, 1997, Condor filed a notice of transfer of claims indicating that it was the transferee of four unsecured trade claims of the debtor, namely, those of Dalton Direct Carpets, Kel–San, Inc., Kingsport Publishing, and Pestco U.S.A., Inc., in the respective amounts of $2,041.00, $349.00, $481.00, and $260.00. The notice states that these claims were assigned to Condor pursuant to certain assignments of claims executed on specified dates in July and August 1996. Condor's

third amended disclosure statement[1] filed on February 25, 1997, sets forth the transfer of three of these claims, but omits Condor's purchase of the claim of Pestco U.S.A., Inc., which had purportedly been assigned to Condor on August 29, 1996. Condor voted the four claims in the stated amounts against the Partners' third amended chapter 11 reorganization plan.

The Partners assert that the four ballots cast by Condor in this regard should be designated as not having been cast in good faith because (1) Condor did not disclose in its disclosure statement all of the claims it had purchased; (2) Condor did not file its notice of transfer of claims until May 1, 1997, the day after ballots on the Partners' and Condor's plans were due; and (3) Condor had an ulterior purpose in voting the claims against the Partners' plan, that being to attempt to defeat the Partners' plan and to promote the confirmation of Condor's plan.[2] In response, Condor asserts that the Partners were not entitled to any prior notice regarding the purchase of the claims and, that in any event, the Partners were aware all along of Condor's efforts to purchase the unsecured trade claims of the debtor. As for the alleged ulterior purpose behind the voting of the claims, Condor maintains that it is entitled to pursue such purchases to protect its interests and that the law is clear that purchases such as these do not constitute a basis for disqualifying the ballots cast by it against the Partners' third amended plan.

## II.

■ 11 U.S.C. § 1126(e) provides that "[o]n request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title." Section 1126(e) specifically authorizes the court to designate and disqualify votes by any entity whose acceptance or rejection was not in good faith. *In re Waterville Valley Town Square Assoc.*, 208 B.R. 90, 94 (Bankr. D.N.H.1997). The Sixth Circuit Court of Appeals recently discussed the "good faith" standard of § 1126(e) in a single asset chapter 11 case wherein the debtor's undersecured creditor, Connecticut General, purchased all but one of the debtor's noninsider unsecured claims and voted the purchased claims against the debtor's reorganization plan. *See 255 Park Plaza Assoc. Ltd. Partnership v. Connecticut Gen. Life Ins. Co. (In re 255 Park Plaza Assoc. Ltd. Partnership)*, 100 F.3d 1214 (6th Cir.1996). In that case, the debtor complained that Connecticut General's votes based on the purchased claims were cast in bad faith and should have been disqualified because Connecticut General had proposed a competing plan and possessed an ulterior motive, that being either to take over the debtor or destroy the debtor at any cost. *Id.* at 1219.

■ The Sixth Circuit noted that while the Bankruptcy Code does not define the "good faith" requirement of § 1126(e), the Supreme Court in *Young v. Higbee Co.*, 324 U.S. 204, 211 n. 10, 65 S.Ct. 594, 598 n. 10, 89 L.Ed. 890 (1945), after analyzing the predecessor statute to § 1126(e) "concluded that its purpose was to prevent the use of 'obstructive tactics and hold-up techniques,' which would in turn give some creditors an unfair advantage over other creditors in the confirmation process." *Id.* The Sixth Circuit also approvingly quoted from a Fourth Circuit Court of Appeals opinion wherein the court held that a creditor "who casts his vote with a purpose of coercing payment to him of more than he might reasonably perceive as his fair share of the debtor's estate, does not cast his vote in good faith" and that "a creditor may not cast his vote for ulterior purpose and expect to

---

1. The disclosure statement recites that "Condor has previously purchased several claims of Class 1 Creditors [as defined in Condor's plan]. The purchased claims were those of Dalton Direct Carpets, Kel–San, Inc. and Kingsport Publishing, who were paid 100 percent of their claims. A number of other holders of Class 1 Claims were contacted about selling their claims, but they declined to accept Condor's offer."

2. Although the claims at issue herein which Condor purchased were also voted in Class 1 by Condor in favor of its third amended liquidation plan, the Partners' motion does not request that these ballots be designated as not having been cast in good faith.

have it counted." *Id.* (quoting *Insinger Mach. Co. v. Federal Support Co. (In re Federal Support Co.),* 859 F.2d 17, 19 (4th Cir.1988)). The Sixth Circuit found the law to be clear, however, that the Bankruptcy Code does not require selfless disinterest and the fact that a creditor purchases claims for the purpose of "securing the approval or rejection of a plan does not of itself amount to 'bad faith.'" *Id.* at 1219 (quoting *In re Applegate Property, Ltd.,* 133 B.R. 827, 834 (Bankr.W.D.Tex.1991) and *In re Allegheny Intl., Inc.,* 118 B.R. 282, 289 (Bankr.W.D.Pa. 1990)). "If bad faith could be found any time a claim is purchased to block approval of a plan, there would be no incentive to purchase claims." *Id.* at 1219. The court also rejected as meritless the debtor's assertion of a *per se* rule that a plan proponent may not purchase the claims of creditors. "While a plan-proponent's purchase of votes may shed light on that proponent's motive, whether bad faith exists can only be decided after an analysis of the facts of each case." *Id.*

Although the Sixth Circuit's discussion of this issue is probably *dicta* since the court initially found the appeal to have been rendered moot, the Ninth Circuit readily relied upon *225 Park Plaza* in rejecting a similar argument by a debtor in a chapter 11 single asset case involving the purchase by the debtor's largest secured creditor of twenty-one of the thirty-four unsecured claims for 100 cents on the dollar. *See Figter Ltd. v. Teachers Ins. and Annuity Ass'n of America (In re Figter Ltd.),* 118 F.3d 635 (9th Cir. 1997). After quoting from the same Supreme Court and Fourth Circuit opinions cited by the Sixth Circuit in *225 Park Plaza,* the Ninth Circuit stated the following concerning "good faith" in the context of the purchase of claims:

In short, the concept of good faith is a fluid one, and no single factor can be said to inexorably demand an ultimate result, nor must a single set of factors be considered. It is always necessary to keep in mind the difference between a creditor's self interest as a creditor and a motive which is ulterior to the purpose of protecting a creditor's interest. Prior cases can offer guidance, but, when all is said and done, the bankruptcy court must simply approach each good faith determination with a perspicacity derived from the data of its informed practical experience in dealing with bankrupts and their creditors.

*Id.* at 639–40. Condor's alleged lack of good faith in purchasing and voting the four unsecured trade claims will be evaluated in light of these principles.

### III.

The only evidence before the court touching on this issue was that adduced by the Partners from Condor's representative, Scott Kocurek, upon cross examination by the Partners' counsel at the confirmation hearing. Mr. Kocurek testified that Condor had purchased the four claims for 100 cents on the dollar and had attempted to purchase all the unsecured trade claims in an effort to protect Condor's interest with respect to its $10.2 million claim. He stated that at the time of the claims purchases, Condor was uncertain of what was going to be proposed, and that by purchasing the claims, Condor's interest within the bankruptcy would be protected. Mr. Kocurek was asked to compare the amounts which Condor voted on each of the four claims as reflected in the Partners' ballot summary with *Exhibit D* of Condor's disclosure statement containing a list of the unsecured trade claims. Mr. Kocurek noted that three of the four did not correspond with the amounts on Condor's list.[3] Finally, Mr. Kocurek was directed to page 17 of Condor's third amended disclosure statement and asked to confirm that Condor's purchase of the claim of Pestco U.S.A., Inc. was not referenced therein. The Partners cite this

---

3. *Exhibit D* lists the claims of Dalton Direct Carpets, Kel–San, Inc., Kingsport Publishing, and Pestco U.S.A., Inc. in the respective amounts of $1,286.00, $137.55, $510.40, and $260.00, while the amounts voted by Condor on these claims are in the respective amounts of $2,041.00, $349.00, $481.00 and $260.00. The amounts of these claims as scheduled by the debtor are in the respective amounts of $2,000.00, $349.00, $481.00 and $260.00. Although the variance in the amounts of these claims was not explained, it had no real effect on the overall numbers of acceptances and amounts in determining whether an impaired class accepted the Partners' plan.

omission along with the fact that the notice of transfer of claims was not filed until May 1, 1997, after voting on the competing plans had been completed and more than nine months after the purchase of the claims in July and August 1996, as evidence of Condor's lack of good faith.

■■■ The court disagrees and does not find that either of these circumstances indicate a lack of good faith. Condor's counsel explained that the failure to disclose the Pestco U.S.A. transfer in Condor's disclosure statement was an inadvertent omission on his part and no evidence contradicted this explanation. As discussed more fully below, there was no indication that the Partners were prejudiced by this omission. The Pestco U.S.A. claim has no significant mathematical effect upon the overall calculation of percentages of acceptances since it is only for the small amount of $260.00.

The question as to the timeliness of the notice of transfer filing is also a "red herring." Fed. R. Bankr.P. 3001(e)[4] governs the transfers of claims and requires a transferee of a filed claim to file with the clerk evidence of the transfer.[5] Upon the filing of such evidence, the clerk must immediately notify the alleged transferor who then has twenty days to object. *See* Fed. R. Bankr.P. 3001(e)(2). If no objection is filed, the transferee is automatically substituted for the transferor. *Id.* Rule 3001(e) does not specify a time period within which the transferee must file the notice of transfer with the court although it has been held that the notice must be filed within a reasonable time and that the failure to do so may result in disallowance of the transferred claim if the delay prejudiced a party in interest. *See Venhaus v. Wilson (In re Wilson)*, 96 B.R. 257, 261 (9th Cir. BAP 1988) (transferred claim disallowed where delay in filing notice of transfer prejudiced debtors who had settled claim with original claimholder). As stated by the bankruptcy appellate panel in *Wilson*, "[t]he rule's silence with regard to a time limit cannot be interpreted as giving a transferee *carte blanche* in the filing of such notice if a delay would result in prejudice to other parties." *Id.*

Regardless of whether the Rule 3001(e) notice was filed by Condor within a reasonable time, there is no indication, nor do the Partners even allege, that they or any other party in interest were prejudiced in any way by Condor's alleged untimely filing.[6] The

---

4. Regarding the transfer of claims other than for security, Fed. R. Bankr.P. 3001(e) provides in pertinent part as follows:

> (1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.
> (2) Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor....

5. It appears that none of the four claimants from which Condor purchased its claims actually filed a proof of claim, but it was not necessary for these creditors to do so in order to assert a claim in this chapter 11 case because these claims were scheduled by the debtor and not listed as disputed, contingent or unliquidated. *See, e.g., In re Heritage Village Church and Missionary Fellowship, Inc.*, 87 B.R. 17, 18 (Bankr.D.S.C.1988); Fed. R. Bankr.P. 3003(b)(1). Despite the absence of proofs of claims being actually filed, subparagraph (2) of Fed. R. Bankr.P. 3001(e) rather than subparagraph (1) governs the transfers at issue in this case since Rule 3001(e)(2) pertains not only to proofs of claims actually filed but also those that are deemed filed under 11 U.S.C. § 1111(a). *See In re Zaleha*, 162 B.R. 309, 314 n. 5 (Bankr.D.Idaho 1993); *In re Oxford Royal Mushroom Prods., Inc.*, 93 B.R. 390 (Bankr.E.D.Pa.1988); *but see* 9 COLLIER ON BANKRUPTCY ¶ 3001.09[6] n. 18 (15th ed. rev.1997)("[I]t seems more appropriate for the transferee of a claim filed only pursuant to § 1111 to comply with Rule 3001(e)(1).").

6. Absent prejudice to the estate or a party in interest, there is no indication that failure to comply with Rule 3001(e), without more, affects

Partners do not even deny Condor's assertion that the Partners knew of the purchases at the time they occurred, an allegation that is supported by the record. The fee applications filed by debtor's counsel and approved by the court contain exhibits of several time entries evidencing that Mr. Trent, his counsel and debtor's counsel were aware as early as July 29, 1996, that Condor was attempting to purchase the unsecured trade claims. Condor's purchase of the claims of Dalton Direct Carpets, Kel–San, Inc., and Kingsport Publishing was formally disclosed when Condor filed its first disclosure statement on September 16, 1996, which in this regard contained the same remarks as in its third amended disclosure statement. See supra note 1. In addition, there is nothing to indicate that Condor gained any advantage from its delay in filing the Rule 3001(e) notice. The absence of a benefit to Condor, the Partners' actual knowledge of the transfers, and the lack of prejudice to the Partners or any other party belie the charge of bad faith.[7]

Perhaps realizing this, the Partners argue that Condor's lack of timeliness in filing the transfer notice evidences bad faith, considering that Condor also had an ulterior motive in voting the claims against the Partners' plan, that being to attempt to defeat the Partners' plan and to promote the confirmation of Condor's plan. The conclusion that Condor had an ulterior motive in voting the claims against the Partners' plan, however, is not supported by any evidence before the court.[8] The uncontradicted testimony by Condor's representative is that Condor purchased the claims to protect itself at a time when it was uncertain as to what would transpire in the bankruptcy case. At the time Condor was assigned the four claims in July and August 1996, neither the Partners nor Condor had proposed a plan. Because the Partners have failed to come forward with any proof that Condor was not simply protecting its claim by purchasing the unsecured trade claims, this court cannot conclude that the claims purchased by Condor and voted against the Partners' plan was done in bad faith.

## IV.

In conclusion, the Partners' motion will be denied and the ballots cast by Condor against the Partners' plan for the four unsecured trade claims which it purchased will not be disqualified. The foregoing constitutes the court's finding of facts and conclusions of law pursuant to Fed.R.Civ.P. 52(a),

the enforceability of an otherwise valid transfer. See Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1313 (1st Cir.1993), reh'g denied (1993) ("The Code does not speak to the validity of claim transfers, and the Bankruptcy Rules provide only procedures for the filing of notice required for a transferee to be recognized as the holder of the claim."); In re Zaleha, 162 B.R. at 314–315 (failure to comply with Rule 3001(e)(2) does not deprive claim purchaser of standing to object to plan confirmation).

7. It is not clear whether the Partners even have standing to challenge any alleged noncompliance by Condor with Fed. R. Bankr.P. 3001(e). The only entity expressly required under Rule 3001(e) to be given notice of the alleged transfer is the purported transferor, although obviously it is to the benefit of the transferee that any person responsible for disbursements in the case have notice of the transfer. See Jordan v. Colorado Student Loan Program (In re Jordan), 146 B.R. 31, 32 (D.Colo.1992) (there is no requirement that the debtor be notified of the transfer); 9 COLLIER ON BANKRUPTCY ¶ 3001.09[2] (15th ed. rev. 1997). Compliance with Rule 3001(e) appears designed primarily to meet the due process requirement that a creditor be given notice and an opportunity to object to any purported transfer of its claims against the estate. Especially in light of the 1991 amendment to Rule 3001(e) which removed the requirement that the court approve postpetition transfers of claims and limited its role to adjudication of disputes regarding the enforceability of the transfer under nonbankruptcy law, it is questionable whether a party other than the alleged transferor may object to a purported transfer. See 1991 Advisory Committee Note to Fed. R. Bankr.P. 3001; Viking Assoc., L.L.C. v. Drewes (In re Olson), 120 F.3d 98 (8th Cir.1997), reversing In re Olson, 191 B.R. 991 (Bankr.D.Minn.1996), wherein the bankruptcy court sua sponte had conducted an examination of the transfer of claims.

8. Condor purchased the claims at issue for 100 cents on the dollar and made similar proposals for the purchase of all the unsecured trade claims. In 255 Park Plaza, the Sixth Circuit cited Connecticut General's offer to purchase for full value the claims of all noninsider unsecured creditors as evidence of its lack of bad faith. In re 255 Park Plaza Assoc. Ltd. Partnership, 100 F.3d at 1219.

as incorporated by Fed. R. Bankr.P. 7052. An order will be entered contemporaneously with the filing of this memorandum opinion.